1  Robert A. Bleicher (SBN 111334)
   Rebecca H. Benavides (SBN 246201 )
2  HOLLAND & KNIGHT LLP
   50 California Street, 28th Floor
3  San Francisco, California  94111
   Telephone:  (415) 743-6900
4  Facsimile:  (415) 743-6910

5  Attorneys for Plaintiff
   Royal Caribbean Cruises Ltd.

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10 ROYAL CARIBBEAN CRUISES LTD.        )   CASE NO. C 07-02582 CRB
                                       )
11        Plaintiff,                   )   PLAINTIFF'S MEMORANDUM OF LAW
                                       )   IN SUPPORT OF AN *EX PARTE*
12        v.                           )   APPLICATION FOR THE ISSUANCE OF
                                       )   AN ORDER DIRECTING THE
13 NATIONAL BIOFUELS, L.P. and         )   ISSUANCE OF A WRIT OF MARITIME
   ENAGRA INC.,                        )   ATTACHMENT AND GARNISHMENT
14                                     )
          Defendants.                  )
15                                     )   Date:
                                       )   Department:
16                                     )   Time:

17

18

19

20

21

22

23

24

25

26

27

28
   PLAINTIFF'S MEMORANDUM OF LAW ISO                    Case No.  C 07-02582 CRB
   *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
   ATTACHMENT AND GARNISHMENT

1

## **TABLE OF CONTENTS**

2

3    PRELIMINARY STATEMENT ...........................................................................1

     STATEMENT OF FACTS .................................................................................1
4
     ARGUMENT.....................................................................................................7
5    I.    PLAINTIFF IS ENTITLED TO AN ORDER DIRECTING THE ISSUANCE OF A
           WRIT OF MARITIME ATTACHMENT BECAUSE IT HAS SHOWN THAT IT
6          HAS A MARITIME CLAIM AND THAT THE DEFENDANT CANNOT BE
           FOUND IN THE DISTRICT ...........................................................................7
7
     II.   A RULE B ACTION MAY BE BROUGHT AS A SUPPLEMENTAL
8          PROCEEDING FOR THE PURPOSE OF OBTAINING SECURITY ...............................12

9    III.  ISSUANCE OF A WRIT OF MARITIME ATTACHMENT *EX PARTE* IS THE
           STANDARD MANNER IN WHICH SUCH WRITS ARE ISSUED ...........................14
10
     CONCLUSION.................................................................................................16

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

3

## **CASES**

4
*Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904 (4th Cir. 1981)..........................15

5
*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006).......................9

6
*Atkins v. The Disintegrating Co.*, 85 U.S. (18 Wall.) 272 (1873)..........................7

7
*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996) ...............7

8
*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000)..........................10

9
*Cobelfret-Cie Belge v. Samick Lines Co.*, 542 F. Supp. 29 (W.D. Wash. 1983)..........................9

10
*Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403 n.7 (5th Cir. 2004) ..........................11

11
*ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 434 (2d Cir. 2000) ..........................8

12
*Cook Indus., Inc. v. Tokyo Maritime Co.*, 1978 A.M.C. 1979, 1981 (D. Alaska 1978) ...............9

13
*Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers GmbH & Co.*,
14
    409 F. Supp. 2d 427 (S.D.N.Y. 2006)..........................10

15
*International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]..................11

16
*LaBanca v. Ostermunchner*, 664 F.2d 65 (5th Cir. Unit B 1981)..........................9

17
*Merchants Nat'l Bank v. Dredge GENERAL G.L. GILLESPIE*,
    663 F.2d 1338 (5th Cir. Unit A 1981)..........................15

18
*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002) ..........................11

19
*Polar Shipping Ltd. v. Oriental Shipping Corp.*,
20
    680 F.2d 627, 630 (9th Cir. 1982)..........................7, 12, 13, 14

21
*Staronset Shipping Ltd. v. North Star Navigation Inc.*,
    659 F. Supp. 189 (S.D.N.Y. 1987)..........................12

22
*Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. (1950)..........................7

23
*The West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v.*
24
    *McAllister Bros., Inc.*, 1993 A.M.C. 2559 (E.D. Pa. 1993)..........................12

25
*Warn v. M/Y Maridome*, 961 F. Supp. 1357 (S.D. Cal. 1997)..........................9

26
*Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406 (9th Cir. 1977) ..........................11

27
*Western Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd.*,
    762 F. Supp. 1302 (S.D. Ohio 1991)..........................12

28
*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002)..........................12, 13

## STATUTES

28 U.S.C. § 1333 .................................................................................................. 8

## OTHER AUTHORITIES

FED. R. CIV. P. SUPP. R. B, *Advisory Committee Notes*, 1985 Amendment ................................... 8

FED. R. CIV. P. SUPP. R. E, *1985 Advisory Committee's Notes* .................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## PRELIMINARY STATEMENT

2

3      Plaintiff, Royal Caribbean Cruises Ltd. ("RCL" or "Plaintiff"), pursuant to Rule B of the

4 Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

5 Procedure, submits this memorandum of law in support of its application for an *ex parte* order

6 directing that a writ of maritime attachment and garnishment be issued by the Clerk of this Court

7 against property of the Defendants herein located within the jurisdiction of this Honorable Court.

8

## STATEMENT OF FACTS

9      Plaintiff requests the Court to issue an Order that will allow it to seize certain property of

10 the defendants while it is briefly here, in this district, and have it held as security for Plaintiff's

11 claims.

12      This action arises from the breach of contract by defendant National Biofuels, L.P.

13 ("NBF") to supply fuel to RCL vessels for the period January 24, 2006 to December 31, 2008.

14 Under the terms of the Contract, NBF was to provide fuel to vessels of the RCL fleet in periodic

15 installments throughout the term of the Contract. NBF has breached its obligations under the

16 Contract by failing to provide fuel to RCL as provided under the Contract despite RCL's having

17 performed fully under the Contract. *See Verified Complaint* in this action ("Complaint") ¶¶ 5-9.

18 As a result of NBF's breach, RCL has sustained damages and losses in excess of $7 million.

19 *Complaint* ¶¶ 11-12.

20      While all disputes arising out of the Contract are to be arbitrated in New York, under

21 New York law, the action herein is submitted in accordance with Rule B of the Supplemental

22 Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well

23 as 9 U.S.C. §8. This action is not and cannot be considered a waiver of the Contract's arbitration

24 clause. As more fully explained in the Declaration of Michael J. Frevola ("Frevola Dec.") in

25 support of this application, ¶ 3, RCL demanded arbitration against Defendant NBF on April 25,

26

- 1 -

27 PLAINTIFF'S MEMORANDUM OF LAW ISO                          Case No.  C 07-02582 CRB
*EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28 DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
ATTACHMENT AND GARNISHMENT

1    2007. NBF has not yet appointed an arbitrator in response to that demand. This lawsuit is

2    brought as a supplementary action to the arbitral proceeding for the purpose of obtaining security

3    for the Plaintiff's claims against defendants NBF and Enagra Inc. ("Enagra") (collectively

4    "Defendants").

5        Defendant Enagra was and is a business entity organized and existing under the laws of

6    California, with a principal place at 5120 Woodway Drive #10010, Houston, Texas 77056. *Id.* at

7    ¶ 4. Although Enagra is incorporated in California with an agent for service, it in fact appears to

8    have no genuine business activities in this jurisdiction. It has no telephone number for its

9    business anywhere in California and the representation of its corporate offices at 2475 Hanover

10   Street in Palo Alto is false—those are the law offices of Pillsbury Winthrop Shaw Pittman LLP

11   and Enagra is unknown to that office's receptionist. Further, while Enagra seems to falsely

12   represents to the State of California that its offices are in Palo Alto, it states to the U. S.

13   Government that it has offices in San Francisco and provides a 650-area code telephone number

14   of an individual, not the telephone number of a business. Declaration of Robert Bleicher ¶¶ 6-

15   10; Frevola Dec. ¶ 17 and Exhibits 5 and 6 thereto. Accordingly, Enagra is not found within this

16   district.

17       Moreover, based on information learned by RCL in the last few days, as set forth below,

18   RCL believes and contends that Enagra is an alter-ego of defendant NBF, is dominated by

19   defendant NBF so as to have no separate corporate mind, and exists and is designed and intended

20   by NBF to defeat NBF's creditors and avoid NBF's liabilities.

21       Under the terms of the Contract, NBF agreed to provide RCL with fuel for its vessels

22   pursuant to RCL's operational requirements. Frevola Dec. ¶ 8. The Contract provided that RCL

23   would advise NBF of the estimated amounts of fuel that RCL would require within a designated

24   time frame, which amounts RCL then would request to be delivered to supply its vessels. *Id.*

25   NBF further agreed that, in the event that it breached its obligation to provide RCL fuel under the

26

27   PLAINTIFF'S MEMORANDUM OF LAW ISO
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER

28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT

- 2 -

Case No.  C 07-02582 CRB

1    Contract, NBF would be liable to RCL, *inter alia*, for the damages incurred by RCL in having to

2    cover for NBF's failure to perform as required under the Contract. *Id.* at ¶ 9.

3         RCL has complied with all of its obligations under the Contract, including notifying NBF

4    in advance of its fuel requirements. *Complaint* at ¶19. On April 17, 2007, RCL contacted NBF

5    for the purposes of taking delivery of fuel under the Contract and in accordance with fuel

6    requirements of which RCL previously had advised NBF. The fuel which RCL sought to be

7    delivered under this request already had been purchased by RCL by wire transfer dated

8    December 26, 2006 and was slated for loading aboard the cruise ships M/V INFINITY, M/V

9    SUMMIT and M/V RADIANCE OF THE SEAS (the "Fuel"). *Id.* at ¶ 20.

10        Initially, NBF replied that it did not have sufficient inventory to fulfill RCL's request.

11   RCL questioned this representation by NBF in light of the fact that NBF had loaded another

12   vessel, the FAIRCHEM STEED, with fuel from its tanks that NBF had ordered to be carried as

13   cargo to, and sold to a third party, in Europe. *Id.* at ¶ 21. In response to RCL's question

14   regarding the cargo on the FAIRCHEM STEED, NBF denied having any fuel stored that was

15   reserved for RCL. *Id.* at ¶ 21. However, NBF did have the Fuel that had been reserved for RCL

16   but NBF loaded that Fuel aboard the FAIRCHEM STEED for the purpose of selling it to ED&F

17   in Europe. *Id.* at ¶¶ 22-23

18        On April 18, 2007, RCL demanded by e-mail that NBF immediately confirm that it

19   would honor its commitments under the Contract because the M/V INFINITY needed to be

20   fueled for its next cruise on Sunday, April 22, 2007. In that e-mail, RCL further stated that if

21   NBF did not confirm its intention to honor the Contract, RCL would be required to purchase

22   MGO (marine gas oil) on the open market to cover for the Fuel NBF had refused to supply to

23   RCL's vessel. *Id.* at ¶ 24. A copy of RCL's April 18, 2007 e-mail to NBF is also annexed as

24   Exhibit 3 to the Frevola Declaration at ¶ 14.

25

26

27
     PLAINTIFF'S MEMORANDUM OF LAW ISO                          Case No.  C 07-02582 CRB
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER

28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT

1    On Thursday, May 10, 2007, RCL wrote to ED&F to advise that it was preparing to

2   commence arrest proceedings in The Netherlands to arrest that portion of the Fuel which had

3   been improperly loaded aboard the FAIRCHEM STEED. *Complaint* at ¶ 25.

4        In response to RCL's letter, ED&F replied on Friday, May 11, 2007 that the Fuel aboard

5   the FAIRCHEM STEED already had been paid for and that such payment had been made to

6   Enagra, not NBF. *Id.* at ¶ 26. A copy of ED&F's Treasury Instruction dated May 9, 2007

7   reflecting the order to pay Enagra for the Fuel aboard the FAIRCHEM STEED is also annexed

8   as Exhibit 4 to the Frevola Declaration at ¶ 16.

9        Since being advised by ED&F that Enagra was the party to be paid for the Fuel aboard

10  the FAIRCHEM STEED, RCL has obtained copies of some of the bills of lading for the Fuel

11  aboard the FAIRCHEM STEED (the "Bills of Lading"), as well as the Cargo Manifests for that

12  cargo (the "Cargo Manifests") filed with the U.S. Department of the Treasury. Review of the

13  Cargo Manifests shows that Enagra listed its address as the same as the address of NBF: 5120

14  Woodway Drive #10010, Houston, Texas 77056. *Complaint* at ¶ 27. Copies of the Bills of

15  Lading and of the Cargo Manifests are annexed as Exhibits 5 and 6, respectively, to the Frevola

16  Declaration at ¶ 17. Additionally, Michael Petras is listed on both the Bills of Lading and the

17  Cargo Manifests as the designated contact person for Enagra. *Complaint* at ¶ 27. As shown by

18  the document annexed as Exhibit 7 to the Frevola Declaration and downloaded from the Texas

19  Department of State website, Michael Petras is a director of NBF. Frevola Dec. at ¶ 17.

20       RCL believes and contends that NBF transferred ownership of the Fuel shipped under the

21  Bill of Lading to its alter-ego Enagra without consideration in an effort to defeat NBF's creditors

22  and avoid NBF's liabilities. *Complaint* at ¶ 28.

23       RCL has purchased fuel to cover the Fuel that NBF refused to deliver to RCL and to fuel

24  the M/V INFINITY. *Id.* at ¶ 29.

- 4 -

1       Neither NBF nor Enagra are found within the district as required by FRCivP Supp B(1)

2   and Local Admiralty Rule 2-3.  Defendant NBF is organized and exists under the laws of Texas,

3   and has a principal place of business at 5120 Woodway Drive, Suite 10010, Houston, TX 77056.

4   Frevola Dec. ¶ 6.  Although NBF has an agent for service of process on file with the California

5   Business Portal, further research behind that filing confirms NBF is not located in this District:

6   the California Secretary of State's California Business Portal and a search of local telephone

7   directories establish that there are no listings for NBF in this district and NBF has no business

8   address in California.  Besides the aforementioned agent for service of process present in this

9   district, no other information was found for Defendant NBF.  Frevola Dec. ¶¶ 5-7.

10      Enagra is similarly absent form this jurisdiction despite its superficial status as a

11  California corporation with an agent for service of process in California.  According to the

12  California Secretary of State on-line California Business Portal, Enagra became a California

13  corporation on February 2, 2007 and it represented to the State of California that its corporate

14  offices are located at 2475 Hanover Street, Palo Alto, California 94304-1114.  However, that

15  address, 2475 Hanover Street, Palo Alto, houses the offices of Pillsbury Winthrop Shaw Pittman

16  LLP.  There is no indication at 2475 Hanover that Enagra maintains offices in that building.

17  Pillsbury Winthrop's receptionist confirms that Enagra is unknown at 2475 Hanover Street in

18  Palo Alto. Declaration of Robert Bleicher ("Bleicher Dec.) ¶¶  6, 8.  Directory assistance also

19  confirms that there is no telephone listing anywhere in California for Enagra, Inc., let alone in

20  Palo Alto or San Francisco. Bleicher Dec. ¶ 7.

21      The bill of lading, attached as Exhibit 4 to the Complaint, shows an address for Enagra at

22  381 Bush Street, Suite 300, San Francisco.  Yet, Enagra is not listed on the roster of tenants in

23  the small lobby of 381 Bush Street.  Rather, the tenant of Suite 300 is shown as "SFSOS INC."

24  The sign outside the door of  Suite 300 states "SFSOS INC." and only a sheet of plain white

25  paper is affixed to the signage with the name "Enagra, Inc." typed on it.  That same bill of lading

26

- 5 -

27  PLAINTIFF'S MEMORANDUM OF LAW ISO                          Case No.  C 07-02582 CRB
    *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28  DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
    ATTACHMENT AND GARNISHMENT

1    gives a telephone number for "Mike Petras" of Enagra with a 650 area code. San Francisco's

2    area code is 415; 650 is the area code for San Mateo County. Bleicher Dec. ¶¶ 9-10.

3         In addition to the absence of both NBF and Enagra from this jurisdiction, it appears that

4    Enagra is the alter ego of NBF. The unity between NBF and Enagra is revealed by the Bills of

5    Lading and Cargo Manifests for the RCL fuel NBF and Enagra have attempted to divert to a

6    third party buyer, as well as by the records of the Texas Department of State. The Bills of

7    Lading and Cargo Manifest (Exhibits 5 and 6 to the Frevola Declaration at ¶ 17) show that NBF

8    and Enagra have the identical address in Houston, Texas. *Id.* The Texas Department of State

9    shows that Mike Petras is a director of NBF, and he is presumably the same Mike Petras

10   identified as the notify party on the Bills of Lading. *Id.* and Exhibit 7 thereto. Given the

11   evidently sham enterprise of Enagra in California, it thus appears likely that NBF and Enagra are

12   alter egos.

13        As a result of NBF's breach of its maritime contract with RCL, RCL has been injured and

14   has demanded the aforementioned arbitration. RCL now seeks, under Rule B of the

15   Supplemental Rules for Certain Admiralty and Maritime Claims, to attach certain assets of NBF

16   and/or Enagra which are, or will be for a period of time, located in this district. NBF or Enagra

17   have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name of

18   National Biofuels, L.P. or in the name of Enagra Inc., which funds are with, upon information

19   and belief, the following financial institutions: Bank of America, N.A.; The Bank of New York;

20   Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan

21   Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered

22   Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN

23   Amro Bank; Bank Leumi USA; Fortis Financial Groups; Banco Popular; Bank of Tokyo-

24   Mitsubishi UFJ Ltd. (or any other financial institution within the Northern District of California).

25

26
- 6 -
27   PLAINTIFF'S MEMORANDUM OF LAW ISO                        Case No.  C 07-02582 CRB
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT

1  Bleicher Dec. ¶ 3. RCL seeks an order of this Court directing the issuance of a writ of maritime

2  attachment and garnishment of the Property.

3      As described more fully below, this practice commonly is accepted by courts sitting in

4  admiralty.  The prerequisites to issuance of a maritime seizure order are that the defendants not

5  be located in this district, and that the claims at issue be maritime claims.  These prerequisites are

6  satisfied here.

7  <u>ARGUMENT</u>

8

9  I.    <u>PLAINTIFF IS ENTITLED TO AN ORDER DIRECTING THE ISSUANCE OF A</u>

10       <u>WRIT OF MARITIME ATTACHMENT BECAUSE IT HAS SHOWN THAT IT</u>

11       <u>HAS A MARITIME CLAIM AND THAT THE DEFENDANT CANNOT BE</u>

12       <u>FOUND IN THE DISTRICT</u>

13      Under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of

14  the Federal Rules of Civil Procedure, it is well-settled that "*in personam* jurisdiction over the

15  defendant is obtained by compelling its appearance through attachment of its goods and chattels,

16  or credits and effects." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 630 (9th

17  Cir. 1982) (citing *Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684

18  (1950)).  A plaintiff's right to obtain maritime attachment of a defendant's property to secure its

19  claim is venerable.  As stated by the Second Circuit:

20      The use of the process of attachment in civil causes of maritime jurisdiction by

21      courts of admiralty . . . has prevailed during a period extending as far back as the

22      authentic history of those tribunals can be traced.

23  *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47-48 (2d Cir. 1996)

24  (quoting *Atkins v. The Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303 (1873)).

25      Accordingly, maritime attachment is available whenever "the plaintiff has an *in*

26  *personam* claim against the defendant which is cognizable in admiralty . . . . In other words, the

- 7 -

27  PLAINTIFF'S MEMORANDUM OF LAW ISO                     Case No.  C 07-02582 CRB
   *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28  DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
   ATTACHMENT AND GARNISHMENT

1   plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28

2   U.S.C. § 1333." Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 J.

3   MAR. L. & COMM. 512, 526 & n.20 (1989). The only other prerequisite necessary for a plaintiff

4   to demonstrate its entitlement to a writ of maritime attachment and garnishment is to show that

5   "the defendant cannot be found within the district." FED. R. CIV. P. SUPP. R. B(1)(b). Hence,

6   where a plaintiff files a maritime claim and a declaration showing that the defendant cannot be

7   found within the district, that plaintiff has satisfied the prerequisites for obtaining an order

8   directing the issuance of a writ of maritime attachment and garnishment and the court should

9   issue the requested order without further inquiry:

10      Although a plaintiff seeking attachment must supply, along with its verified

11      complaint, an affidavit stating that defendant cannot be found within the district,

12      ***little else is required and there need only be a hearing <u>after</u> the attachment is***

13      ***served.***

14   *ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 434 (2d Cir. 2000) (emphasis added);

15   *see also* FED. R. CIV. P. SUPP. R. B, *Advisory Committee Notes*, 1985 Amendment (stating that

16   Rule B(1) "envisions that the order [directing issuance of a writ] will issue when the plaintiff

17   makes a *prima facie* showing that he has a maritime claim against the defendant in the amount

18   sued for and the defendant is not present in the district. A simple order with conclusory findings

19   is contemplated.").

20      This district's Local Admiralty Rules likewise confirm that an attachment order should

21   issue upon the showing by plaintiff that (1) it has a maritime claim and (2) that defendant cannot

22   be found within the district. Local Admiralty Rule E.3 states, in pertinent part, "[i]f the judge

23   finds the conditions set forth in FRCivP Supp Rules B or C exist, ***the judge shall authorize the***

24   ***clerk to issue appropriate process.***" *Local Rules of the United States District Court for the*

25   *Northern District of California, Local Admiralty Rule 3-1(a)* (emphasis added). As indicated by

26

                                          - 8 -

27   PLAINTIFF'S MEMORANDUM OF LAW ISO                           Case No. C 07-02582 CRB
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT

1  the Advisory Committee Notes, the issuance of a writ should be ordered upon the finding that the

2  plaintiff's claim satisfies the threshold elements.    Thus, based on the Complaint and the Frevola

3  and Bleicher Declarations an order directing the issuance of a writ of maritime attachment and

4  garnishment is proper here. Here, the prerequisites for the Plaintiffs' application for an order

5  directing the issuance of a writ of maritime attachment and garnishment have been satisfied.

6       First, Plaintiff's claim is a maritime contract claim for the supply of fuel to RCL vessels

7  which is subject to admiralty jurisdiction. Thus, the first element of the maritime attachment

8  writ inquiry clearly has been satisfied.

9       Second, Plaintiff's search for the Defendants in this district failed to find any evidence of

10  a place of business in this district.  Federal district courts in the Ninth Circuit have applied a two-

11  prong test to determine whether a defendant is "found within the district" for purposes of Rule B.

12  This test requires (1) sufficient contacts with the district to satisfy jurisdictional due process; and

13  (2) presence of someone within the district on whom process can be served. *See, e.g., State of*

14  *Oregon, State Highway Comm'm v. Tug Go Getter*, 398 F.2d 873, 874 (9th Cir. 1968) (citations

15  omitted); *Cobelfret-Cie Belge v. Samick Lines Co.*, 542 F. Supp. 29, 31 (W.D. Wash. 1983);

16  *Cook Indus., Inc. v. Tokyo Maritime Co.*, 1978 A.M.C. 1979, 1981 (D. Alaska 1978).  The Ninth

17  Circuit's test is the standard inquiry used in determining whether a defendant may be "found

18  within the district." *See, e.g., Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434,

19  443 (2d Cir. 2006); *LaBanca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. Unit B 1981) (citing,

20  *inter alia, Tug Go Getter*, 398 F.2d at 874).

21       The first prong of this test requires that (1) the "state's long-arm statute must permit

22  jurisdiction"; and (2) the "exercise of jurisdiction must be consistent with the demands of due

23  process". *Warn v. M/Y Maridome*, 961 F. Supp. 1357, 1365 (S.D. Cal. 1997).   Inquiry by

24  counsel for RCL has uncovered that, as a preliminary matter, neither NBF nor Enagra have

25  sufficient contacts with the state of California nor this federal district to satisfy jurisdiction

26

- 9 -

27  PLAINTIFF'S MEMORANDUM OF LAW ISO                          Case No.  C 07-02582 CRB
   *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28  DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
   ATTACHMENT AND GARNISHMENT

1    requirements for purposes of either specific jurisdiction or general jurisdiction.[1]  Frevola Dec. ¶¶

2    5-7; Bleicher Dec. ¶¶ 6-10.

3        Moreover, the mere fact that Enagra is incorporated in the state of California and that it

4    and NBF have an agent for service of process do not, alone, meet the due process requirements

5    necessary for general *in personam* jurisdiction and thus to be "found within the district."

6    Enagra's and NBF's lack of substantial business operations in this district together with the

7    evidence of Enagra's misrepresentations concerning the location of its offices, strongly indicates

8    that neither have the requisite continuous and systematic contacts to carry the exercise of general

9    *in personam* jurisdiction.  *See generally Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d

10   1082, 1086 (9th Cir. 2000) (to establish general jurisdiction the defendant must have

11   "substantial" or "continuous and systematic activities" within the forum state).  Indeed to find

12   that these singular contacts alone constitute that Enagra or NBF may be "found within the

13   district," in light of preliminary facts uncovered by RCL's counsel, undermines the ultimate

14   purpose of Rule B – (1) to provide security for the plaintiff if suit is successful; and (2) to assure

15   the defendant's appearance in an action.  *See, e.g., Erne Shipping, Inc. v. HBC Hamburg Bulk*

16   *Carriers GmbH & Co.*, 409 F. Supp. 2d 427, 436 (S.D.N.Y. 2006).  Indeed, upon preliminary

17   investigation there is nothing within the activities of NBF or Enagra that would "necessarily

18   provide security" to RCL should its suit be successful nor ensure either NBF's nor Enagra's

19   appearance in this action.  *See id.* (holding that simply filing of authorization to do business in

20   state did not mean that defendant was "found within the district" for purposes of Rule B).  The

21   evidence is that the continuous and systematic activities of both Enagra and NBF are in Texas.

22       The apparent alter ego relationship between NBF and Enagra should also not be allowed

23   to bar RCL's right to a Rule B attachment.  The equitable doctrine of alter ego is intended to

24   _____

25   [1] Where RCL's filings show that "the conditions of this Rule B appear to exist," a district court must enter an *ex parte* order authorizing process of attachment and garnishment" and "plaintiff need make only [a] very modest showing" in order to secure attachment." *See Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers GmbH & Co.*, 409

26   F. Supp. 2d 427, 431 (S.D.N.Y. 2006).

- 10 -

27   PLAINTIFF'S MEMORANDUM OF LAW ISO                          Case No.  C 07-02582 CRB
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER

28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT

1    prevent a parent company from using a sham corporation to perpetrate a fraud or illegitimately

2    shield itself from liability.  *See, e.g., Universal Paragon Corp. v. Ingersoll-Rand Co.*, No. C05-

3    03100, 2007 WL 518828, *5 (N.D. Cal. Feb. 13, 2007) (stating that "[u]nder the alter ego

4    doctrine, when the corporate form is used to perpetrate a fraud, circumvent a statute, or

5    accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate

6    entity and deem the corporation's acts to be those of the persons or organizations actually

7    controlling the corporation.") (citation omitted).  Rule B's purpose is to provide a plaintiff with

8    immediate security for its claims.  Here, it is clear that NBF is not "found" within the Northern

9    District, and by all appearances Enagra is a shell enterprise used by NBF to insulate funds from

10   creditors like RCL.  As has been shown, Enagra clearly has funds in this district that it is seeking

11   to transfer quickly to NBF.  Frevola Dec. ¶ 22.

12          Moreover, it is well-settled that an alter ego (such as Enagra) is found to be subject to *in*

13   *personam* jurisdiction in the same jurisdictions as their corporate counterparts (here, NBF).  *See,*

14   *e.g., Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 n.7 (5th Cir. 2004) (stating

15   that "[p]ersonal jurisdiction may be established over a corporate officer by establishing that the

16   individual is an alter ego of a corporation over which the district court has established personal

17   jurisdiction." . . . Because the corporation and its individual alter ego "are the *same entity*, the

18   jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the

19   [*International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)], due process

20   analysis.") (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002))

21   (emphasis in original); *see also Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 425-

22   26 (9th Cir. 1977) (observing that *in personam* jurisdiction over an alter ego can be imputed to

23   that alter ego based on the contacts of its counterpart).  In this case, NBF is present in Texas and

24   is not present in California.  Frevola Dec. ¶ 6.  The same should be held for Enagra.  The mere

25   filing of incorporation in California should not serve to insulate Enagra from attachment of its

26

- 11 -

27   PLAINTIFF'S MEMORANDUM OF LAW ISO                           Case No.  C 07-02582 CRB
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT

1  assets here where Enagra has no corporate mind distinct from its dominant Texas parent. Indeed,

2  as the alter ego doctrine is designed to strip a defendant of corporate protections and to look

3  behind corporate veils, the California incorporation should be disregarded as a mere artifice and

4  attachment of Enagra's assets be permitted.

5       Enagra should not be permitted to use the fictions of its "presence" in this district and its

6  purported separateness from NBF to avoid a Rule B attachment of funds destined for its parent

7  and alter ego, NBF. To do so would turn both the remedy of Rule B and the equitable doctrine

8  of alter ego upside down.

## II.    A RULE B ACTION MAY BE BROUGHT AS A SUPPLEMENTAL PROCEEDING FOR THE PURPOSE OF OBTAINING SECURITY

It is likewise well-settled that a plaintiff with an admiralty cause of action may
commence a supplemental maritime attachment proceeding in a jurisdiction other than that in
which the primary lawsuit (or other legal proceeding) is pending to secure its claim. *See, e.g.,
Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 631-33 (9th Cir. 1982); *Winter
Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002); *The West of England Ship Owners
Mut. Ins. Ass'n (Luxembourg) v. McAllister Bros., Inc.*, 1993 A.M.C. 2559, 2564-66 (E.D. Pa.
1993); *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 190-91
(S.D.N.Y. 1987).[2] This principle has been applied both in cases in which the plaintiff's claims
are being litigated in another forum due to the presence of a forum selection clause or the
presence of jurisdiction over the defendants elsewhere, *see, e.g., Polar Shipping*, 680 F.2d at
633; *Western Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd.*, 762 F. Supp. 1302, 1309
(S.D. Ohio 1991); *Staronset Shipping*, 659 F. Supp. at 190-91, and also in the context of
arbitration where an arbitration clause requires that the parties arbitrate the dispute as oppose to

---

[2] Plaintiff could string cite literally dozens of other decisions for this proposition, but in the interest of space and brevity have listed the cited cases as a representative sample.

- 12 -

litigate it. *See, e.g., Winter Storm Shipping*, 310 F.3d at 265 (involving supplemental maritime attachment lawsuit filed pursuant to Rule B in Southern District of New York in connection with London arbitration).

Indeed, the *Polar Shipping* case involved a quite similar fact pattern. In *Polar Shipping*, the district court vacated a writ of maritime attachment and garnishment on grounds that a forum selection clause required the parties' dispute to be resolved by London arbitration or, alternatively, in the High Court of London. *Polar Shipping*, 680 F.2d at 630. The plaintiff appealed, contending that it was entitled to commence and maintain its lawsuit to obtain security pursuant to Rule B despite the governing forum selection clause. The Ninth Circuit agreed, reversing the district court and reinstating the plaintiff's attachment. In so holding, the Ninth Circuit stated:

> We hold that *in an admiralty action*, absent express intent to the contrary, *a forum selection clause* providing that all disputes under the [contract] will be determined by a selected foreign court *neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum.*

*Polar Shipping*, 680 F.2d at 633 (emphasis added). Quite simply, courts have recognized for decades that a plaintiff in an admiralty proceeding may bring a Rule B maritime attachment claim for the sole purpose of gaining security in another jurisdiction so long as the prerequisites for Rule B are met in the jurisdiction in which the plaintiff's Rule B action has been commenced.

Thus, this supplemental action for security to the arbitration in New York is properly before this Court.

- 13 -

**III.    ISSUANCE OF A WRIT OF MARITIME ATTACHMENT *EX PARTE* IS THE STANDARD MANNER IN WHICH SUCH WRITS ARE ISSUED**

It also is well-settled that there is no requirement that the Defendant be given notice of the Plaintiff's attachment application prior to the service of the requested writ on the Defendant's property.  Moreover, *ex parte* relief for a Rule B attachment is authorized by FRCivP Supp B(1), Local Admiralty Rule 3-1(b) and Local Rule 7-10.  The unique nature of maritime commerce and the ability for defendants to depart the jurisdiction suddenly serves as the basis for all maritime arrest and attachment applications to be reviewed *ex parte*.  Indeed, the Ninth Circuit noted in *Polar Shipping* that "[t]he need to attach now and notify later is as great now as it ever was, if not greater."  680 F.2d at 637.

The Ninth Circuit's decision in *Polar Shipping* provides an excellent discussion of why prior notice specifically cannot be given in connection with Rule B maritime attachment proceedings, stating in part:

> *Due process does not require pre-attachment notice.  Such notice could readily defeat the whole proceeding*.  The ship, if it were being libeled under Supplemental Rule C, could depart beyond the jurisdiction; the other property, to be seized under Supplemental Rule C, or attached under Supplemental Rule B, could be shipped out, otherwise disposed of, or concealed; credits, such as are here involved, could be collected or transferred out of the jurisdiction.
>
> *    *    *
>
> Pre-attachment notice and hearing could, as we have explained, defeat both of the purposes of the [maritime] attachment – obtaining jurisdiction, and obtaining security.

- 14 -

PLAINTIFF'S MEMORANDUM OF LAW ISO
*EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
ATTACHMENT AND GARNISHMENT

Case No.  C 07-02582 CRB

1    *Id.* at 638 (emphasis added) (citing *Merchants Nat'l Bank v. Dredge GENERAL G.L.*

2    *GILLESPIE*, 663 F.2d 1338, 1334 (5th Cir. Unit A 1981); *Amstar Corp. v. S/S ALEXANDROS*

3    *T.*, 664 F.2d 904, 911 (4th Cir. 1981)).

4         Because of the transitory nature of the Property within the jurisdiction of this Court, it is

5    respectfully submitted that the requested maritime attachment is a classic example of why

6    maritime attachments under Rule B are permitted to be issued without notice and on an *ex parte*

7    basis.  Tellingly, on May 14, 2007 Enagra attempted to transfer approximately $250,000 from its

8    San Francisco bank account with Citibank to NBF's account in Houston.  Those funds were

9    attached by Citibank's New York office in response to a Rule B writ served on Citibank in a

10    coordinate Rule B proceeding pending before the Honorable Jed S. Rakoff in the United States

11    District for the Southern District of New York entitled *Royal Caribbean Cruises Ltd. v. National*

12    *Biofuels et al.*, SDNY Docket # 07 Civ. 3353 (JSR).  Attached as Exhibit 8 to the Frevola

13    Declaration is a copy of Citibank's e-mail to Mr. Frevola advising of the attachment of the

14    aforementioned wire transfer, including the details of the originator (Enagra) and beneficiary

15    (NBF).  Frevola Dec. ¶ 22.

16         In place of a pre-attachment hearing, the Supplemental Rules for Certain Admiralty and

17    Maritime Claims provides, at Rule E(4)(f), the right for any party having an interest in the

18    attached property to have a prompt hearing at which they may seek to vacate the attachment.  In

19    this district, Local Admiralty Rule 4-8 provides that such hearing "shall be conducted upon 3

20    days written notice to plaintiff, unless otherwise ordered."  By giving the defendant a prompt

21    hearing following the *ex parte* attachment, the Supplemental Admiralty Rules provide a balance

22    between the competing interests at issue.  *See, e.g.*, FED. R. CIV. P. SUPP. R. E, *1985 Advisory*

23    *Committee's Notes*.  For these reasons, it is consistent with traditional notions of maritime law

24    and admiralty practice that this Court issue the requested process of attachment *ex parte*.

25

26

27

28

- 15 -

1

<u>CONCLUSION</u>

2        For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order

3   directing the issuance of a writ of maritime attachment and garnishment against the property of

4   the Defendants that might be found within this district.

5

6   Date:   May 16, 2007                          Robert A. Bleicher
7                                                 Rebecca H. Benavides
                                                  HOLLAND & KNIGHT LLP
8

9                                           By:   _____
                                                       Robert A. Bleicher
10

11                                          Attorneys for Plaintiff Royal Caribbean Cruises
                                            Ltd.
12

13

14   # 4548958_v1

15

16

17

18

19

20

21

22

23

24

25

26
                                           - 16 -
27   PLAINTIFF'S MEMORANDUM OF LAW ISO                        Case No.  C 07-02582 CRB
     *EX PARTE* APPLICATION FOR THE ISSUANCE OF AN ORDER
28   DIRECTING THE ISSUANCE OF A WRIT OF MARITIME
     ATTACHMENT AND GARNISHMENT