1  Robert A. Bleicher (SBN 111334)
   Rebecca H. Benavides (SBN 246201 )
2  HOLLAND & KNIGHT LLP
   50 California Street, 28th Floor
3  San Francisco, California  94111
   Telephone:  (415) 743-6900
4  Facsimile:  (415) 743-6910

5  Attorneys for Plaintiff
   Royal Caribbean Cruises Ltd.

6

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9

10  ROYAL CARIBBEAN CRUISES LTD.        )  CASE NO. C 07-02582 CRB
                                        )
11        Plaintiff,                    )  PLAINTIFF'S MEMORANDUM OF LAW
                                        )  IN OPPOSITION TO ENAGRA'S
12        v.                            )  MOTION FOR A PROMPT POST-
                                        )  ATTACHMENT HEARING
13  NATIONAL BIOFUELS, L.P. and         )
    ENAGRA INC.,                        )
14                                      )  Date: June 5, 2007
          Defendants.                   )  Department: Courtroom 8, 19th Floor
15                                      )  Time: 10:00 am
                                        )
16  _____    )

17

18

19

20

21

22

23

24

25

26

27

28
   PLAINTIFF'S MEMORANDUM OF LAW
   IN OPPOSITION TO ENAGRA'S MOTION                    Case No.  C 07-02582 CRB
   FOR A PROMPT POST-ATTACHMENT HEARING

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .................................................................................. 1

ARGUMENT ...................................................................................................... 5

I.     ENAGRA'S MOTION FOR A PROMPT HEARING IS PREMATURE ........................ 6

II.    THE DEFENDANT CANNOT BE FOUND IN THE DISTRICT ................................ 7

III.   PLAINTIFF ADEQUATELY ALLEGED ITS CLAIM THAT ENAGRA IS
       NBF'S ALTER EGO AND THAT THE CORPORATE VEIL SHOULD BE
       PIERCED ................................................................................................ 16

IV.    RCL WAS NOT REQUIRED TO SERVE PROCESS ON ENAGRA ......................... 19

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
460 F.3d 434 (2d Cir. 2006)........................................................ 5, 7, 13, 14, 16, 18

*Bergensen d.y. A/S v. Lindholm*,
760 F. Supp. 976 (D. Conn. 1991).................................................................... 17

*Cobelfret-Cie Belge v. Samick Lines Co.*,
542 F. Supp. 29 (W.D. Wash. 1982)............................................................. 7, 12

*Compaq Computer Corp. v. Ergonome Inc.*,
387 F.3d 403  (5th Cir. 2004)........................................................................... 15

*Container Applications Int'l, Inc. v. Baltic Shipping Co.*, Civ. Act.
No. 95-2209, 95-2229, 1995 U.S. Dist. LEXIS 12390,  (E.D. La. Aug. 15, 1995) ......... 10, 11

*Cook Indus., Inc. v. Tokyo Maritime Co.*,
1978 A.M.C. 1979 (D. Alaska 1978)............................................................. 7, 12

*Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*,
782 F.2d 329 (2d Cir. 1986)............................................................................ 16

*Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH*,
409 F. Supp. 2d 427 (S.D.N.Y. 2006)................................................................ 9

*Integrated Container Svcs., Inc. v. Starlines Container Shipping, Ltd.*,
476 F. Supp. 119 (S.D.N.Y. 1979) .......................................................... 12, 13, 14

*International Shoe v. Washington*,
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)............................................. 15

*La Banca v. Ostermunchner*,
664 F.2d 65 (5th Cir. 1981)................................................................................ 7

*Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.*,
169 F. Supp. 2d 1341 (M.D. Fla. 2001).............................................................. 5

*Northern Tankers (Cyprus) Ltd. v. Backstrom*,
967 F. Supp. 1391 (D. Conn. 1997)......................................................... 16, 17, 19

*Parkroad Corp. v. China Worldwide Shipping Co.*, 05 CV 5085, 2005
U.S. Dist. LEXIS 11122,  2005 AMC 1839 (S.D.N.Y. June 6, 2005) ............................. 7, 8, 9

*Patin v. Thoroughbred Power Boats Inc.*,
294 F.3d 640 (5th Cir. 2002)............................................................................ 15

*Polar Shipping Ltd. v. Oriental Shipping Corp.*,
680 F.2d 627 ( 9th Cir. 1982)........................................................................... 20

*Royal Swan Navigation Co. v. Global Container Lines, Ltd.,*
    *868 F. Supp. 599 (S.D.N.Y. 1994)* ...................................................................... 10

*SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 2007 U.S. Dist.
    LEXIS 18562 (S.D.N.Y. Mar. 15, 2007) ..........................................5, 16, 18

*State Of Oregon, State Highway Commission v. Tug GO GETTER,*
    *398 F.2d 873 (9th Cir. 1968)* ..............................................................7, 11, 12

*United States et al v. Cia. Naviera Continental S.A.,*
    *178 F. Supp. 561 (S.D.N.Y. 1959)* .... 12*Warn v. M/Y Maridome*, 961 F. Supp. 1357 (S.D. Cal.
    1997) ...................................................................................................................... 8

*Wells Fargo & Co. v. Wells Fargo Exp. Co.,*
    *556 F.2d 406 (9th Cir. 1977)* ........................................................................ 15

*West of England Ship Owners Mutual Insurance Association v. McAllister Bros.,*
    *829 F. Supp. 122 (E.D. Pa. 1993)* ................................................................. 11

*Williamson v. Recovery Ltd. Partnership*, No.06 Civ. 5724
    (LTS)(FM), 2007 U.S. Dist. LEXIS 4438(S.D.N.Y. Jan. 16, 2007) ............... 19, 20

**State Cases**

Universal Paragon Corp. v. Ingersoll-Rand Co., No. C05-03100,
    2007 WL 518828 (N.D. Cal. Feb. 13, 2007)......................................................... 14

**Other Authorities**

FRCivP Supp E(4)(f)......................................................................................... 6

FRCivP Supp B.................................................................................passim

Local Admiralty Rule 4-8.................................................................................... 6

## PRELIMINARY STATEMENT

Plaintiff, Royal Caribbean Cruises Ltd. ("RCL" or "Plaintiff") submits this memorandum in opposition to Enagra, Inc.'s ("Enagra") expedited motion for a prompt post-hearing attachment at which plaintiff should show cause why the attachment as to Enagra, Inc., should not be vacated. As is shown below, the attachment should not be vacated because it is untimely and because RCL has adequately plead its maritime claim and Enagra cannot be found in this district.

## STATEMENT OF FACTS

This action arises from the breach of contract by defendant National Biofuels, L.P. ("NBF") to supply fuel to RCL vessels  for the period January 24, 2006 to December 31, 2008. Under the terms of the Contract, NBF was to provide fuel to vessels of the RCL fleet in periodic installments for specifically nominated vessels throughout the term of the Contract. NBF has breached the Contract by failing to provide fuel to RCL despite RCL's having performed fully under the Contract. See Verified Complaint in this action ("Complaint") ¶¶ 5-9. As a result of NBF's breach, RCL has sustained damages and losses in excess of $7 million. Complaint ¶¶ 11-12.

Defendant Enagra was and is a business entity organized and existing under the laws of California, which according to incorrect information it provided to the Secretary of State, has a principal place of business at 2475 Hanover Street, Palo Alto, CA 94304. Declaration of Enegra's CEO, Michael Petras dated May 31, 2007 ("Petras Dec.") ¶4. In fact, that is not the address of Enagra's office but of its counsel. *Id.* Enagra's address is not listed with the Secretary of State or in any directory. Although Enagra has an agent for service, that agent is in Sacramento, which is in the Eastern District of California, not the Northern District as required under the Rule B analysis.

In fact, it appears that Enagra has no genuine business activities in this district. Mr. Petras admits that Enagra has no listed telephone number for its business anywhere in California

- 1 -

1    and although he alleges that Enagra's office has a telephone he has not provided that number to

2    this Court. Petras Dec. ¶4. Further, other than on the sublease for its office space, Enagra has

3    not provided any evidence on which it properly and publicly represented its actual address. See

4    Bills of Lading, Complaint Ex. 4 and Petras Ex. C, wherein Enagra stated its address as 301 not

5    381 Bush Street; Cargo Manifests, Complaint Ex. 5, wherein Enagra provided the Houston

6    address of NBF as its own address; California Business Portal, Petras Dec. Ex. B.

7        Only the Citibank statement identifying the electronic transfer of funds, from Enagra to

8    NBF, that was attached pursuant to the New York action correctly identified Enagra's address.

9    Michael Frevola's Declaration of May 16, 2007 ("Frevola Dec.") Ex. 8. Even at the 381 Bush

10   Street on the Citibank statement, claimed by Mr. Petras to have been Enagra's address since

11   February (Petras Dec. Ex. 4), Enagra is not listed on the roster of tenants in the small building

12   lobby. Robert Bleicher's Declaration of May 16, 2007 ("Bleicher Dec.") ¶9. Rather, the tenant

13   of Suite 300 is shown as "SFSOS INC." Id. The sign outside the door of Suite 300 states

14   "SFSOS INC." and only a sheet of plain white paper is affixed to the signage with the name

15   "Enagra, Inc." typed on it. Id. The same bill of lading that provided the wrong address for

16   Enagra, provided a telephone number for "Mike Petras" of Enagra with a 650 area code. Since

17   San Francisco's area code is 415 and 650 is the area code for San Mateo County, that could not

18   be the number of the Enagra office. Bleicher Dec. ¶10. Mr. Petras now admits that number is his

19   cell phone number. Petras Dec. ¶7. Thus, not only is Enagra's agent for service of process

20   outside this district, it is not found in the district for jurisdictional purposes, either.

21       Moreover, the allegations in the Complaint sufficiently allege that Enagra is an alter-ego

22   of defendant NBF, is dominated by defendant NBF so as to have no separate corporate mind, and

23   exists and is designed by NBF to defeat NBF's creditors and avoid NBF's liabilities. The

24   evidence provided by Mr. Petras serves only to support those allegations.

25       Under the terms of the Contract, NBF agreed to provide RCL with fuel for its vessels

26   pursuant to RCL's operational requirements. Complaint ¶ 17; Frevola Dec. ¶ 8. The Contract

27

28
- 2 -

PLAINTIFF'S MEMORANDUM OF LAW                                          Case No. C 07-02582 CRB
IN OPPOSITION TO ENAGRA'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

1    provided that RCL would advise NBF of the estimated amounts of fuel that RCL would require

2    within a designated time frame, which amounts RCL then would request to be delivered to

3    supply specifically nominated vessels. *Id.* NBF further agreed that, in the event that it breached

4    its obligation to provide RCL fuel under the Contract, NBF would be liable to RCL, *inter alia*,

5    for the damages incurred by RCL in having to cover for NBF's failure to perform as required

6    under the Contract. Complaint at ¶18; Frevola Dec. ¶ 9.

7    　　RCL has complied with all of its obligations under the Contract, including notifying NBF

8    in advance of its fuel requirements. Complaint at ¶19. On April 17, 2007, RCL contacted NBF

9    for the purposes of taking delivery of fuel under the Contract and in accordance with fuel

10    requirements of which RCL previously had advised NBF. *Id.* at ¶20. The fuel which RCL

11    sought to be delivered under this request already had been purchased by RCL by wire transfer

12    dated December 26, 2006 and was slated for loading aboard the cruise ships M/V INFINITY,

13    M/V SUMMIT and M/V RADIANCE OF THE SEAS (the "Fuel"). *Id.*

14    　　Initially, NBF replied that it did not have sufficient inventory to fulfill RCL's request.

15    RCL questioned this representation by NBF because NBF had loaded another vessel, the

16    FAIRCHEM STEED, with fuel from its tanks that NBF had ordered to be carried as cargo to,

17    and sold to a third party, in Europe. *Id.* at ¶ 21. In response to RCL's question, NBF denied

18    having any fuel stored that was reserved for RCL. *Id.* at ¶ 21. NBF did have the Fuel that had

19    been reserved for RCL but NBF loaded that Fuel aboard the FAIRCHEM STEED for the

20    purpose of selling it to a third party (ED&F) in Europe. *Id.* at ¶¶ 22-23

21    　　On April 18, 2007, RCL demanded by e-mail that NBF immediately confirm that it

22    would honor its commitments under the Contract because the M/V INFINITY needed to be

23    fueled for its next cruise on Sunday, April 22, 2007. In that e-mail, RCL further stated that if

24    NBF did not confirm its intention to honor the Contract, RCL would be required to purchase

25    MGO (marine gas oil) on the open market to cover for the Fuel NBF had refused to supply to

26

27

28

- 3 -

1    RCL's vessel. *Id.* at ¶ 24. See Frevola Dec. ¶ 14 and Ex. 3, copy of RCL's April 18, 2007 e-mail

2    to NBF.

3        On Thursday, May 10, 2007, RCL wrote to ED&F to advise that it was preparing to

4    commence arrest proceedings in The Netherlands to arrest that portion of the Fuel which had

5    been improperly loaded aboard the FAIRCHEM STEED. Complaint at ¶ 25.

6        In response to RCL's letter, ED&F replied on Friday, May 11, 2007 that payment for the

7    Fuel aboard the FAIRCHEM STEED had been made to Enagra, not NBF. *Id.* at ¶ 26. See

8    Frevola Dec. ¶ 16, and Ex. 4, copy of ED&F's Treasury Instruction dated May 9, 2007 reflecting

9    the order to pay Enagra for the Fuel aboard the FAIRCHEM STEED..

10       RCL obtained copies of some of the bills of lading for the Fuel aboard the FAIRCHEM

11   STEED, as well as the Cargo Manifests for that cargo filed with the U.S. Department of the

12   Treasury. As already stated, *supra*, Enagra's address was incorrectly stated on the Bills of

13   Lading and Cargo Manifests. Additionally, Michael Petras is listed on both the Bills of Lading

14   and the Cargo Manifests as the designated contact person for Enagra. Complaint at ¶ 27, Exs. 4,

15   5.

16       As shown by Exhibit 6 to the Complaint and Exhibit 7 to the Frevola Dec. which was

17   downloaded from the Texas Department of State website, Michael Petras is a director of NBF.

18   Complaint ¶27, Frevola Dec. at ¶ 17. Mr. Petras admits that he is a limited partner of defendant

19   National Biofuels L.P. and was its employee up to the very day he signed his declaration. Petras

20   Dec. ¶3. He alleges that defendant National Biofuels L.P. is "managed and controlled by its

21   general partner, National Biofuels LLC". *Id.* He does not explain his allegation that he has no

22   "interest" in National Biofuels LLC. *Id.* Specifically, he does not explain why he is listed as a

23   director of National Biofuels LLC by the Texas Comptroller of Public Account. Complaint ¶27,

24   Ex. 6. He does not deny that he is a director of National Biofuels LLC, which, in his words

25   "manage[s] and control[s]" the defendant NBF.

26

27

28

- 4 -

PLAINTIFF'S MEMORANDUM OF LAW                                    Case No.  C 07-02582 CRB
IN OPPOSITION TO ENAGRA'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

RCL believes and contends that NBF transferred ownership of the Fuel shipped under the Bill of Lading to its alter-ego Enagra without consideration in an effort to defeat NBF's creditors and avoid NBF's liabilities. Complaint at ¶ 28. RCL was forced to purchase fuel to cover the Fuel that NBF refused to deliver to RCL in order to fuel the M/V INFINITY. *Id.* at ¶ 29.

## ARGUMENT

The post-attachment hearing under Supplemental Rule E(4)(f) *is not intended to resolve the underlying merits of the parties' dispute. See, e.g., Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001) (citation omitted). Rather, this Court is to examine RCL's claims using the "*prima facie* admiralty claim" standard. *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 2007 U.S. Dist. LEXIS 18562, *8 (S.D.N.Y. Mar. 15, 2007) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006)). The term "*prima facie* admiralty claim" has been recently defined by several district courts examining the standard as not requiring the plaintiff to produce evidence at this stage to support its allegations, but rather the defendant's challenge must be based on the sufficiency of the complaint and other materials submitted in connection with the Rule (4)(f) hearing.[1] *Id.* at *8-10 (listing cases and holding the *prima facie* test "is consistent with the limited inquiry contemplated by *Aqua Stoli* and comports with a basic definition of the term '*prima facie*.'").

Should RCL demonstrate that it has a *prima facie* admiralty claim and that Enagra is not "found" within this district pursuant to Rule B, Enagra cannot vacate RCL's attachment unless it meets the burden of demonstrating the limited equitable grounds that exist for vacating an otherwise valid attachment. *Aqua Stoli Shipping*, 460 F.3d at 445 & n.5. RCL carries its burden here; Enagra does not.

---

[1] Enagra does not challenge the sufficiency of the Complaint and, therefore, has not even challenged the alter ego allegations on grounds relevant to the motion to vacate.

- 5 -

## I.    ENAGRA'S MOTION FOR A PROMPT HEARING IS PREMATURE

As a preliminary matter, Enagra's motion for a prompt hearing is premature because no attachment has taken place.  According to Rule E(4)(f) of the Supplemental Rules:

> Whenever property is *arrested or attached*, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

(Emphasis added).  Furthermore, under the Admiralty Local Rules of this Court, Rule 4-8:

> The adversary hearing *following arrest or attachment or garnishment* that is called for in FRCivP Supp E(4)(f) shall be conducted upon 3 days written notice to plaintiff, unless otherwise ordered.

(Emphasis added).  Therefore, entitlement to a prompt hearing arises only after property is actually arrested, attached or garnished.  RCL has received no notification that assets of Enagra have been attached.  (Bleicher Opp. Dec. ¶ 10).  In addition, Enagra's motion for a prompt post-attachment hearing does not allege that any assets have been attached.  Mr. Petras vaguely alleged that Enagra's "account in San Francisco is frozen."  (Petras Dec. ¶10).  This vague allegation does not amount to a claim that any assets have been attached.  For that reason, Enagra is not entitled to a prompt hearing and this motion has not met the predicates of Local Admiralty Rule 4-8.  RCL is entitled to the full time allowed under the Federal Rules to respond to Enagra's motion.  Under the circumstances, this expedited motion filed on a Friday requiring a response on Monday should be considered an abuse of process, designed to inconvenience RCL's counsel (and their families).  Enagra's attempt to shorten the time permitted under the Federal Rules has not been made in good faith and should not be countenanced.

- 6 -

## II.    THE DEFENDANT CANNOT BE FOUND IN THE DISTRICT

Enagra claims that the attachment is fatally flawed because it can be found within the district. (Enagra Memo of Law at 4). Enagra's own admissions demonstrate that it cannot be found in the district and that its alleged presence is neither permanent or reliable.

As explained in support of the attachment, Plaintiff's search for the Defendants in this district failed to find any credible evidence of a place of business in this district. Nor has the evidence submitted by Enagra shown that it is present and doing business in the Northern District of California such that it is found in the district under Rule B. Federal district courts in the Ninth Circuit have applied a two-prong test to determine whether a defendant is "found within the district" for purposes of Rule B. This test requires (1) sufficient contacts with the district to satisfy jurisdictional due process; and (2) presence of someone within the district on whom process can be served. *See e.g, State of Oregon v. Tug GO GETTER,* 398 F.2d 873, 874 ( 9th Cir. 1968) (citations ommitted); *Cobelfret-Cie Belge v. Samick Lines Co.,* 542 F. Supp. 29, 31 (W.D. Wash. 1982); *Cook Indus., Inc. v. Tokyo Maritime Co.,* 1978 A.M.C. 1979, 1981 (D. Alaska 1978). The Ninth Circuit's test is the standard inquiry used in determining whether a defendant may be "found within the district." *See, e.g., Aqua Stoli,* 460 F.3d at 443; *La Banca v. Ostermunchner,* 664 F.2d 65, 67 (5th Cir. 1981) (citing, *inter alia, Tug GO GETTER,* 398 F.2d at 874). Enagra cannot meet these requirements.

It is important to note that a defendant's presence in the district must be determined as of the date the complaint was filed. *Parkroad Corp. v. China Worldwide Shipping Co.,* 05 CV 5085, 2005 U.S. Dist. LEXIS 11122, *3, 2005 AMC 1839 (S.D.N.Y. June 6, 2005) (citations omitted). Any post-filing action by Enagra intended to establish its presence within the district should be ignored and is irrelevant. *Id.* at *4 (denying defendant's motion to vacate based on its presence in the district effected subsequent to the filing of the complaint because, "since defendant was not found in this district when the complaint was filed, plaintiff is not precluded from obtaining the requested order of attachment.").

- 7 -

1        The first prong of this test, sufficient contacts in the district to satisfy jurisdictional due

2    process, requires that (1) the "state's long-arm statute must permit jurisdiction"; and (2) the

3    "exercise of jurisdiction must be consistent with the demands of due process". *Warn v. M/Y*

4    *Maridome,* 961 F. Supp. 1357, 1365 (S.D. Cal. 1997).   Pre-filing inquiry by counsel for RCL

5    uncovered that Enagra has insufficient contacts with the state of California and with this federal

6    district to satisfy jurisdiction requirements  for purposes of either specific jurisdiction or general

7    jurisdiction. Frevola Dec. ¶¶ 5-7; Bleicher Dec. ¶¶ 6-10.

8        The Declaration of Michael Petras supports RCL's grounds for attachment and admits the

9    allegations made by RCL in support of the attachment. Mr. Petras admits the truth of Mr.

10   Bleicher's statements in his initial declaration and Supplemental Declaration of May 17, 2007

11   ("Bleicher Supp. Decl."), which alleged that Enagra did not have an office at the location listed

12   by the California Secretary of State and had not filed the required Statement of Information with

13   the California Secretary of State.  Bleicher Dec. ¶6 ; Bleicher Supp. Dec. ¶¶3-7.  In response,

14   Mr. Petras alleged that Enagra has an office at 381 Bush Street, Suite 300 but admits that Enagra

15   listed with the Secretary of State not that address but its outside counsel's office. Petras Dec. ¶4,

16   n.1.[2]  Furthermore, Mr. Petras admitted that Enagra has only a Voice Over Internet Protocol

17   telephone system in its office which is not listed in land-line phone directories. *Id.* at ¶4.

18   Although alleging that there is an office telephone, Mr. Petras has not provided the number to

19   this Court. Mr. Petras admitted that the telephone number on the bills of lading was not Enagra's

20   telephone number but Mr. Petras' own cell phone number. *Id.* at ¶7. Mr. Bleicher's Declaration

21   explained to this Court that the telephone number on the bills of lading could not have been the

22   number of the Enagra office listed on the bills of lading. Bleicher Dec. ¶10. Enagra does not

23   deny that it is not listed on the roster of tenants at 381 Bush Street nor that only a temporary sign,

24   a sheet of plain white paper with the Enagra name on it, was affixed to the signage at Suite 300

25

26   [2] Mr. Petras' stated intent to "update the records with the Secretary of State" (Petras Dec. n.1) is insufficient because
     the standard for being "found within the district" is established at the time the complaint is filed. *Parkroad Corp,*
27   2005 U.S. Dist. LEXIS 11122, at *3.

28   PLAINTIFF'S MEMORANDUM OF LAW                                          Case No.  C 07-02582 CRB
     IN OPPOSITION TO ENAGRA'S MOTION
     FOR A PROMPT POST-ATTACHMENT HEARING

1   on May 17, 2007: over three months after Mr. Petras claimed to be operating Enagra from that

2   office. *Id.* at ¶9.

3         Enagra attempts to demonstrate that it has been doing business from the Bush Street

4   address since February 2007 but has produced no documents to show that it is using that address,

5   other than the lease and bills of lading, latter of which has an admittedly incorrect address.

6   Petras Dec. ¶7. There are certainly no publicly available indications that Enagra uses the Bush

7   Street address to conduct business in San Francisco. As demonstated, one cannot look up the

8   company in any authoritative directory and positively locate an address and telephone number to

9   contact Enagra in this district. As explained in RCL's Supplemental Memo of Law in Support

10   of its application, at 3, the purpose behind Rule B is to provide assets against which a successful

11   plaintiff can enforce its rights. Thus, the district court in *Parkroad Corp.*, explained that a

12   general appearance would not provide a defendant with the necessary presence in the district:

13           The right to the attachment is not defeated by the filing of a general appearance.

14           But for the security of an attachment, because there is no real presence here, the

15           appearance will be of no assistance to plaintiff in enforcing its rights, and it is not

16           equivalent to being found within the district

17   *Parkroad*, 2005 U.S. Dist. LEXIS 11122, at *5, 2005 AMC 1839; *see also Erne Shipping Inc. v.*

18   *HBC Hamburg Bulk Carriers GmbH*, 409 F. Supp. 2d 427, 438 (S.D.N.Y. 2006) ("[A] mere

19   filing for authorization to do business provides no security to a plaintiff. While we recognize

20   that a rule requiring actual presence in the district (rather than just consent) also does not

21   necessarily provide security, at least actual presence makes it far more likely that assets might be

22   located in the district to levy upon should the suit be successful."). The evidence, provided by

23   Enagra, that it is doing business in this district, other than the sublease, all relates to the shipment

24   of fuel on the FAIRCHEM STEED: a shipment that is completed. The payments from Enagra to

25   NBF post-date the initiation of actions by RCL against NBF. Thus, the evidence of a single

26   completed transaction and payment only after legal action was initiated do not provide any

27

28

- 9 -

PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO ENAGRA'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

Case No. C 07-02582 CRB

security to RCL that Enagra will be present for RCL to enforce its rights after it obtains

judgment. Moreover, the facts alleged by Enagra do not demonstrate that Enagra was present

and locatable in the district for jurisdictional purposes at the time the Complaint was filed.

Enagra's statement that "this litigation should never have been commenced at all if RC[L]

had conducted a proper pre-filing investigation and gotten its facts straight" is egregiously

incorrect. (Enagra Memo of Law at 3).[3] The Frevola and Bleicher Declarations and the

Supplemental Declaration demonstrate the required due diligence to establish whether a

defendant is present in the district. The analysis of a Louisiana district court in an earlier Rule B

attachment case is instructive:

> Plaintiff, Naviomar, further argues that, prior to filing its Verified Complaint and
> Motion for Attachment, it made genuine efforts to find a Baltic Shipping agent in
> this district. These efforts included inquiries with the Louisiana Secretary of State
> and with local telephone directories and trade publications. This almost certainly
> satisfies Naviomar's duty to make a *bona fide* effort to find Baltic shipping's agent
> in this district. *Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F.*
> *Supp. 599, 603 (S.D.N.Y. 1994)* (stating that an exhaustive search is not required).

*Container Applications Int'l, Inc. v. Baltic Shipping Co.*, Civ. Act. No. 95-2209, 95-2229, 1995

U.S. Dist. LEXIS 12390, at *6-7 (E.D. La. Aug. 15, 1995) (denying a motion to vacate an

attachment where defendants did not demonstrate presence in the district and an agent for service

of process at the time of the attachments.).

Nor is there any relevance to Mr. Petras' residency in this district. (Enagra Memo of Law

at 2). In addition, contrary to Enagra's suggestion, RCL was not required to call the cell phone

number of Enagra's CEO, Mr. Petras, prior to filing its action. (*Id.*). As the court in *Container*

*Applications* sensibly explained,

---

[3] Nor, as is shown in this memorandum, are the declarations in support of the attachment "demonstrably false and misleading" as Enagra alleges. (Enagra Memo of Law at 1). Indeed, RCL disclosed Enagra's contacts here to the Court as part of its initial application for attachment; that would have been clear if Enagra had reviewed RCL's paper. Such allegations of misleading the Court should be made carefully.

- 10 -

1    While not on point, the decision in *West of England Ship Owners Mutual*

2    *Insurance Association v. McAllister Bros., 829 F. Supp. 122 (E.D. Pa. 1993)*, is

3    instructive.  In *McAllister*, the plaintiff attached some of the defendant's tugboats

4    and the defendant moved to vacate the attachments on the ground that he could be

5    found within the district.  *Id. at 123.*  As in the instant cases, there was no dispute

6    that the defendant was subject to personal jurisdiction in the district.  *Id.*

7    However, defendant argued that it had an agent for service of process because one

8    of its corporate officers resided in the district.  *Id.*  The court considered the

9    plaintiff's efforts to locate an agent, which included inquiries with the Secretary of

10   State and with local directories.  The court then held that, although a corporate

11   officer resided in the district, plaintiff did not have to exhaust every conceivable

12   source of information.  *Id. at 124.*  Nor was the plaintiff obligated to contact the

13   defendant for information because this would alert the defendant of an impending

14   attachment. *Id. at 124-25.*

15   *Container Applications*, 1995 U.S. Dist. LEXIS 12390, at *6-7.

16        The allegations that RCL made in support of its attachment have been admitted by

17   Enagra.  The confusion that surrounds Enagra's address and telephone number undercut any

18   argument that it is present for jurisdictional purposes.[4]  The scant evidence that Enagra has

19   provided to argue its presence in this district shows only that it has subleased space since

20   February.  However, Enagra has not even permanently listed its office in the building directory

21   nor provided a  proper sign for its office.  These unsubstantial and vague allegations of presence

22   in the Northern District of California are insufficient to show the systematic presence required to

23   satisfy the jurisdictional presence requirements that will defeat Rule B attachment. *Tug GO*

24   *GETTER*, 398 F.2d 873.

---

25   [4] Despite the efforts of RCL's counsel to find an address for Enagra, RCL would not have located the correct address
26   without the attachment of NBF's funds in New York.  Only Citibank's statement showing Enagra as the originator of
     funds attached in New York had the correct address for Enagra.  See, Frevola Dec. Ex. 8.  If Enagra was doing
27   business in the district, it was largely keeping that fact and the company's location a secret from those outside the
     company.

- 11 -

28   PLAINTIFF'S MEMORANDUM OF LAW                                    Case No. C 07-02582 CRB
     IN OPPOSITION TO ENAGRA'S MOTION
     FOR A PROMPT POST-ATTACHMENT HEARING

1    Not only are Enagra's contacts with the district insufficient contacts to satisfy

2   jurisdictional due process, but also Enagra lacks someone within the district on whom process

3   can be served. *See e.g, Cobelfret-Cie,* 542 F. Supp.at 31; *Cook Indus.,* 1978 A.M.C. at 1981.

4   As the Ninth Circuit explained in *Tug GO GETTER*

5        As to whether appellee could have been found within the district for process

6        purposes, the question before the court was as stated in *United States et al v. Cia.*

7        *Naviera Continental* S.A., 178 F. Supp. 561 at 565 [S.D.N.Y. 1959] "The precise

8        question is whether 'an officer, a managing or general agent' or other responsible

9        representative of respondent could have been found in the district by the Marshal

10       *with reasonable diligence* for service of process on respondent." (Emphasis

11       added.)

12  *Tug GO GETTER,* 398 F.2d at 874. Here, the efforts of Plaintiff's counsel to locate an office for

13  Enagra demonstrate the difficulty a Marshal would face in attempting service of process.

14       Enagra's agent for service of process is also of no assistance in this proceeding. An agent

15  for service of process in Sacramento, California, is listed for Enagra on the California Business

16  Portal website.  Sacramento is in the Eastern District and is not sufficient to defeat a Rule B

17  attachment because it is not in the Northern District of California.

18       [T]he fact that a defendant can be subjected to the court's *in personam* jurisdiction

19       by virtue of the presence of a resident agent for service of process will not suffice

20       to defeat the attachment if the defendant is not otherwise present in the district in

21       the jurisdictional sense; nor will the fact that the defendant is present in the

22       jurisdictional sense suffice; if he cannot be found for service of process within the

23       district.

24  *Integrated Container Svcs., Inc. v. Starlines Container Shipping, Ltd.,* 476 F. Supp. 119, 122

25  (S.D.N.Y. 1979).  In *Integrated Container,* the defendant was present in the Southern District of

26  New York for jurisdictional purposes and had designated the Secretary of State in Albany, in the

27

28

- 12 -

1    Northern District of New York, as agent for service of process. *Id.* at 123. However, the Court

2    ruled:

3        I conclude that the availability of service upon the Secretary of State outside the

4            district does not defeat the attachment.

5    *Id.* at 124. Further, it is well-established a defendant is not "found" in the district because

6    attorneys who are acting for them are located in the district. *Id.* at 125. The claim of an

7    available agent for service of process in this case is analogous and this Court should

8    similarly reject Enagra's request for vacatur.

9        Enagra claims in a footnote that because the agent for service of process is located in a

10    neighboring jurisdiction, the attachment should be vacated. (Enagra Memo of Law at n.5).

11    Enagra does not fully argue this allegation because it is simplistic and unsupported in admiralty

12    law. NBF recently made this same argument in the Central District of California, claiming that

13    an agent for service of process in this district was sufficient to vacate the attachment. The court

14    rejected that argument. See Bleicher Oppo. Dec. ¶ 11, Exhibit A.

15        Enagra bases its argument on *Aqua Stoli* but fails to fully discuss the analysis in that case.

16    *Aqua Stoli* referred to grounds for vacating an "across the river" attachment involving the

17    Southern and Eastern Districts of New York. However, when the analysis in *Aqua Stoli* is taken

18    in its full context, the passage relied on by Enagra defeats Enagra's argument:

19        Although the precise boundaries of a district court's vacatur power are not before

20        us, we are persuaded that vacatur may be warranted when the defendant can show

21        that it would be subject to *in personam* jurisdiction in another jurisdiction

22        convenient to the plaintiff. . . . The concept of "convenience," however, is a

23        narrowly circumscribed one: A district court may vacate a maritime attachment

24        only if the defendant would be subject to an *in personam* lawsuit in a jurisdiction

25        adjacent to the one in which the attachment proceedings were brought. An

26        "across the river" case where, for example, assets are attached in the Eastern

27

28

- 13 -

PLAINTIFF'S MEMORANDUM OF LAW                    Case No. C 07-02582 CRB
IN OPPOSITION TO ENAGRA'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

1    District but the defendant is located in the Southern District is a paradigmatic

2    example of a case where an attachment should be vacated. *It is less clear to us*

3    *that a district court could vacate an attachment on convenience grounds where*

4    *the adjacent district is more remote and therefore less obviously "convenient"*

5    *to the plaintiff.*

6    *Aqua Stoli*, 460 F.3d at 444 (emphasis added) (internal citations omitted). Here, the courthouses

7    in San Francisco (Northern District) and Sacramento (Eastern District) are almost 100 miles

8    apart and are "more remote" from each other than the Eastern and Southern Districts of New

9    York. The Second Circuit, in *Aqua Stoli*, expressly stated that it did not regard vacatur as clearly

10    warranted in such circumstances. In fact, the situation is more analogous to an attachment in the

11    Southern District of New York with an agent for service of process in the adjacent Northern

12    District of New York; or analogous to the NBF attachment in the Central District of California.

13    The availability of such an agent for service of process has been held inadequate for vacating an

14    attachment. *Integrated Container*,  476 F. Supp. at 124.

15         The apparent alter ego relationship between NBF and Enagra should also not be allowed

16    to bar RCL's right to a Rule B attachment. The equitable doctrine of alter ego is intended to

17    prevent a parent company from using a sham corporation to perpetrate a fraud or illegitimately

18    shield itself from liability. *See, e.g., Universal Paragon Corp. v. Ingersoll-Rand Co.,* No. C05-

19    03100, 2007 WL 518828, *5 (N.D. Cal. Feb. 13, 2007) (stating that "[u]nder the alter ego

20    doctrine, when the corporate form is used to perpetrate a fraud, circumvent a statute, or

21    accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate

22    entity and deem the corporation's acts to be those of the persons or organizations actually

23    controlling the corporation.") (citation omitted). Rule B's purpose is to provide a plaintiff with

24    immediate security for its claims. Here, it is clear that NBF is not "found" within the Northern

25    District, and by all appearances Enagra is a shell enterprise used by NBF to insulate funds from

26

27

28

- 14 -

1   creditors like RCL.  As Mr. Petras has testified, Enagra had significant funds in this district that

2   it transferred recently to NBF.  Petras Dec. ¶ 8, Ex. D; Bleicher Oppo. Dec. ¶ 12, Ex. B.

3          Moreover, it is well-settled that an alter ego (such as Enagra) is found to be subject to *in*

4   *personam* jurisdiction in the same jurisdictions as their corporate counterparts (here, NBF).  *See,*

5   *e.g., Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 n.7 (5th Cir. 2004) (stating

6   that "[p]ersonal jurisdiction may be established over a corporate officer by establishing that the

7   individual is an alter ego of a corporation over which the district court has established personal

8   jurisdiction." . . . Because the corporation and its individual alter ego "are the *same entity*, the

9   jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the

10  [*International Shoe v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)], due

11  process analysis.") (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th

12  Cir. 2002)) (emphasis in original); *see also Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556

13  F.2d 406, 425-26 (9th Cir. 1977) (observing that *in personam* jurisdiction over an alter ego can

14  be imputed to that alter ego based on the contacts of its counterpart).

15         In this case, NBF is present in Texas, not California.  Frevola Dec. ¶ 6.  The same should

16  be held for Enagra.  Mere incorporation in California should not insulate Enagra from attachment

17  here where Enagra has no corporate mind distinct from its dominant Texas parent.  Indeed, as the

18  alter ego doctrine is designed to strip a defendant of corporate protections, the California

19  incorporation should be disregarded as a mere artifice and attachment of Enagra's assets should

20  be permitted.

21         Enagra should not be permitted to use the fictions of its "presence" in this district and its

22  purported separateness from NBF to avoid a Rule B attachment of further funds destined for its

23  parent and alter ego, NBF.  To do so would turn both the remedy of Rule B and the equitable

24  doctrine of alter ego upside down.

25

26

27

28

- 15 -

PLAINTIFF'S MEMORANDUM OF LAW                                    Case No.  C 07-02582 CRB
IN OPPOSITION TO ENAGRA'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

1    **III.    PLAINTIFF ADEQUATELY ALLEGED ITS CLAIM THAT ENAGRA IS NBF'S**

2    **ALTER EGO AND THAT THE CORPORATE VEIL SHOULD BE PIERCED**

3    Enagra argues that it is not an alter ego of NBF.  To defeat a motion to vacate a Rule B

4    attachment, RCL must have stated its claims sufficiently under the *"prima facie* admiralty claim"

5    standard.  *SPL Shipping Ltd.*, 2007 U.S. Dist. LEXIS 18562, at *8 (citing *Aqua Stoli*, 460 F.3d

6    434).  As explained below, RCL has stated a *prima facie* claim that the corporate veils of Enagra

7    and NBF should be pierced because Enagra operates as an alter ego of NBF.  RCL need not

8    prove its claims at this time.  *Id.*

9    Federal common law governs the issue of piercing the corporate veil in admiralty actions

10   and, thus, whether RCL has stated a claim against Enagra.  *See, e.g., Dow Chem. Pac. Ltd. v.*

11   *Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir. 1986) (citations omitted).  Federal common

12   law allows piercing the corporate veil in two circumstances:

13   The individual [or corporate parent] must have used the corporate entity to

14   "perpetuate a fraud or have so dominated and disregarded" the corporate entity's

15   form that the entity "primarily transacted [the individual's or parent's] business

16   rather than its own corporate business."

17   *Id.* (quoting district court decision) (citations omitted).

18   Thus, RCL can establish alter ego relationships between NBF and Enagra by showing

19   either fraud *or* that the corporate defendants are alter egos and were dominated and controlled by

20   an officer or director of the other.   The decision in *Northern Tankers (Cyprus) Ltd. v.*

21   *Backstrom*, 967 F. Supp. 1391, 1399-1401 (D. Conn. 1997), sets forth fifteen relevant factors

22   under federal maritime law used to assess whether veil-piercing is appropriate.  Admiralty courts

23   are clear that these factors "are not a substitute for" the federal maritime law's two tests for

24   piercing the corporate veil, namely (1) fraud *or* (2) dominion and control, but are factors to be

25   used as "an aid" in analyzing a specific situation:

26

27

                                          - 16 -

28   PLAINTIFF'S MEMORANDUM OF LAW                                    Case No.  C 07-02582 CRB
     IN OPPOSITION TO ENAGRA'S MOTION
     FOR A PROMPT POST-ATTACHMENT HEARING

(1) common or overlapping stock ownership between parent and subsidiary; (2) common or overlapping directors and officers; (3) use of same corporate office; (4) inadequate capitalization of subsidiary; (5) financing of subsidiary by parent; (6) parent exists solely as holding company of subsidiaries; (7) parent's use of subsidiaries' property and assets as its own; (8) informal intercorporate loan transactions; (9) incorporation of subsidiary caused by parent; (10) parent and subsidiary's filing of consolidated income tax returns; (11) decision-making for subsidiary by parent and principals; (12) subsidiary's directors do not act independently in interest of subsidiary but in interest of parent; (13) contracts between parent and subsidiary that are more favorable to parent; (14) non-observance of formal legal requirements; (15) existence of fraud, wrongdoing or injustice to third parties.

*Id.* (citing *Bergensen d.y. A/S v. Lindholm*, 760 F. Supp. 976, 987 (D. Conn. 1991)).

As is shown below, the allegations of the Complaint satisfy the *Northern Tankers* test and allege fraud, dominion and control. There is no question that RCL has alleged claims on which – if proven – it will recover. At paragraphs 26 through 31 of the Complaint, RCL alleges detailed facts which recite nearly all of the 15 factors listed above that are to be examined in determining whether an alter ego relationship should be found to exist under maritime law. No more is required at this stage.

The *Northern Tankers* factors are overwhelmingly plead here. Factors 1 and 2: Mr. Petras admits that he is the sole officer and shareholder of Enagra as well as being a limited partner of NBF and, up to the day he signed his declaration, an employee of NBF (Petras Dec. ¶¶2, 3).[5] The allegations in the Complaint were that Mr. Petras was acting as an officer and/or representative of both companies. (Complaint ¶27). As to factor 3: the Complaint alleged that Cargo Manifests filed with the Department of the Treasury provided NBF's address in Texas as

---

[5] Indeed, if Enagra's sale of fuel is in competition with NBF, the fact that Mr. Petras works for and has a fiduciary duty to both companies, as an officer, and that through him the two do business, suggests some collusion between the two companies.

- 17 -

the address for Enagra (Complaint ¶27, Ex. 5). Factors 4, 5, 7 and 8 and 11 to 14 are satisfied by the allegation in the Complaint that NBF transferred ownership of the fuel to Enagra without consideration to defeat NBF's creditors and avoid NBF's liabilities. (Complaint ¶28). As is shown below, even Mr. Petras' Declaration does not explain this transaction. Nevertheless, it is the fact of a sufficient allegation, not Mr. Petras' explanation of the transaction which determines whether the Rule B attachment should survive. *SPL Shipping Ltd.*, 2007 U.S. Dist. LEXIS 18562, at *8 (citing *Aqua Stoli*, 460 F.3d 434). The final factor is a fraud, wrong or injustice to third parties. Here, the wrong done to RCL is the very basis of the entire Complaint. (See e.g., Complaint ¶31).

Furthermore, if RCL were required to prove its claims at this early stage, then Enagra's own admitted actions demonstrate both the need for attachment here and that allegations sufficient to demonstrate a *prima facie* alter ego claim have been not only alleged but admitted. The Complaint in this action was signed and filed on May 15, 2007. An earlier Rule B attachment action, based on the same facts, was filed in the Southern District of New York. Frevola Dec. ¶22. On May 13, 2007 Enagra attempted to wire transfer $258,890 to NBF. Petras Dec. Ex. D. Those funds were attached as the result of the New York action. Frevola Dec. ¶22. Mr. Petras admitted that those funds were payment for the fuel loaded on the FAIRCHEM STEED, which he alleges Enagra purchased from NBF, but he has provided no contract for the transfer of ownership of the fuel. Petras Dec. ¶¶7-8, Ex. C. He made no allegation that there was any payment to NBF from Enagra between the time it took ownership and May 13, 2007.

With wire transfer of funds apparently subject to attachment, NBF and Enagra decided to avoid further attachment and to remove the funds from this district, where they are subject to attachment, and send them to Houston, where Rule B attachment is unavailable. Therefore, with a "cashier's check" dated May 16, 2007 Enagra sent $2,870,698, to NBF in Houston. A "cashier's check" is the equivalent of cash and payable on demand. It cannot be considered usual business practices to transmit such large sums of money by such vulnerable means across the

- 18 -

country. The fact that a far smaller sum was sent by wire transfer days earlier shows the unusual nature of the cashier's check payment. These facts suggest that the transaction was not at arm's length but that Enagra is operating as an alter ego of NBF to avoid NBF's obligations to RCL.

Veil-piercing under maritime law only requires a showing of ***either*** fraud or domination and control. RCL's allegations cover both categories and meet the threshold inquiry consistent with denying a motion to vacate. The corporate fiction is generally upheld, but equity does not allow an alter ego to disregard the laws by which a company is established, then seek to hide behind the corporate protection of that very same company. *Northern Tankers*, 967 F. Supp. at 1408, 1413. Here, NBF and Enagra seek to use the corporate protection of the very companies whose rules they have disregarded with impunity. Their failure to respect corporate form should prevent them from utilizing that protection. The Complaint thus alleges sufficient facts that, if proven, establish RCL's right to recover against both NBF and Enagra on the alter ego claims. Nothing more is needed at this juncture.

## IV.    RCL WAS NOT REQUIRED TO SERVE PROCESS ON ENAGRA

Enagra's Memorandum of Law and accompanying declarations refer repeatedly to the fact that Enagra has not been served in this action. Enagra's Memo of Law at 1, 2, 5; Petras Decl. ¶ 5; Sweeney Decl. ¶4. The defendants made similar--and unsuccessful--arguments in *Williamson v. Recovery Ltd. Partnership*, No.06 Civ. 5724 (LTS)(FM), 2007 U.S. Dist. LEXIS 4438, at *7 (S.D.N.Y. Jan. 16, 2007) where the court explained that a plaintiff need only provide notice to defendants after an actual attachment of property has been made and the plaintiff has been notified of that attachment:

> Defendants also argue that the order and writs of attachment should be vacated
> because Plaintiffs have failed to give them prompt notice of the attachments as
> required by *Supplemental Rule B*. Here, the record demonstrates that notice of the
> actual attachments achieved pursuant to the writ has been given promptly upon

- 19 -

1    Plaintiffs becoming aware of the attachment of particular assets.  This is sufficient

2    compliance with the notice requirements of *Supplemental Rule B*.

3  Here, if there has been an attachment--which is unclear--RCL has not been made aware of that

4  purported event.  (Bleicher Oppo. Decl. ¶ 10).  Therefore, no requirement of service on Enagra

5  has arisen.  *Williamson*, 2007 U.S. Dist. LEXIS 4438, at *7; Supplemental Rule B(4)(2).  As

6  RCL noted in its application for the writ of attachment, the Ninth Circuit made it clear that pre-

7  attachment notice is antithetical to the very purpose of Rule B.  *Polar Shipping Ltd. v. Oriental*

8  *Shipping Corp.*, 680 F.2d 627, 631-33 (9th Cir. 1982).

9    Enagra's arguments regarding service are wrong and irrelevant.

10

11                              **CONCLUSION**

12    For the foregoing reasons, Plaintiff respectfully requests that this Court deny the motion

13  of Enagra and continue the writ of maritime attachment and garnishment against the property of

14  the Defendants that might be found within this district.

15

16  Date:  June 4, 2007                Robert A. Bleicher
                                       Rebecca H. Benavides
17                                     HOLLAND & KNIGHT LLP

18

19                                     By:  _Robert A. Bleicher_

20                                           Robert A. Bleicher

21                                     Attorneys for Plaintiff Royal Caribbean Cruises
                                       Ltd.

22

23

24  # 4583475_v1

25

26

27
                                       - 20 -
28  PLAINTIFF'S MEMORANDUM OF LAW                          Case No.  C 07-02582 CRB
    IN OPPOSITION TO ENAGRA'S MOTION
    FOR A PROMPT POST-ATTACHMENT HEARING