1  Robert A. Bleicher (SBN 111334)
   Rebecca H. Benavides (SBN 246201)
2  HOLLAND & KNIGHT LLP
   50 California Street, 28th Floor
3  San Francisco, California 94111
   Telephone: (415) 743-6900
4  Facsimile: (415) 743-6910

5  Attorneys for Plaintiff
   Royal Caribbean Cruises Ltd.

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11 ROYAL CARIBBEAN CRUISES LTD.     )   CASE NO. C 07-02582 CRB
                                    )
12      Plaintiff,                  )   DECLARATION OF ROBERT A.
                                    )   BLEICHER, ESQ. IN OPPOSITION TO
13      v.                          )   ENAGRA, INC.'S MOTION FOR A
                                    )   PROMPT POST-ATTACHMENT
14 NATIONAL BIOFUELS, L.P. and      )   HEARING
   ENAGRA, INC.,                    )
15                                  )
        Defendants.                 )
16                                  )
                                    )
17 _____)

18

19 I, ROBERT A. BLEICHER, declare as follows:

20      1.      I am a partner of the firm of Holland & Knight LLP, counsel for Plaintiff Royal

21 Caribbean Cruises Ltd. ("Plaintiff") in the foregoing action. I am attorney admitted to practice

22 before all the courts of California and admitted to the bar of this Court. I am familiar with the

23 facts of this case, and the information stated herein is based upon my own knowledge and

24 knowledge gained through my work on this matter.

25      2.      This Declaration is offered in opposition to Enagra Inc.'s ("Enagra") motion for a

26 prompt post-attachment hearing.

27                                   - 1 -

28 DECLARATION OF ROBERT A. BLEICHER                          Case No.  C 07-02582 CRB
   IN OPPOSITION TO ENAGRA, INC.'S MOTION
   FOR A PROMPT POST-ATTACHMENT HEARING

1          3.      Although Enagra is apparently a California corporation with an agent for service

2    of process in California, even given the information provided by Enagra in support of the

3    motion, it is not "found" within this district as required by FRCivP Supp B(1) and Local

4    Admiralty Rule 2-3.  According to the California Secretary of State on-line California Business

5    Portal, Enagra became a California corporation on February 2, 2007 and it identified to the State

6    of California that its offices are located at 2475 Hanover Street, Palo Alto, California 94304-

7    1114.  A copy of the Business Portal page was attached to my initial declaration as Exhibit 1.

8    Enagra's CEO admitted that the address, 2475 Hanover Street, Palo Alto is not that of Enagra's

9    office but its counsel Pillsbury Winthrop Shaw Pittman LLP.  Declaration of Michael Petras

10   dated May 31, 2007 ("Petras Dec.") ¶4.

11         4.      Mr. Petras admitted that Enagra is not listed in any land-line directory and did not

12   provide the location of any telephone listing for Enagra in California nor did he provide the

13   telephone number of Enagra's office.  *Id.*  Tellingly, Enagra's telephone number appears to be

14   the personal mobile phone of Mr. Petras.  *Id.* at ¶7, Complaint Ex. 4, 5.  Thus, rather than Enagra

15   having its own separate phone number, its phone number is the same as that of its sole

16   shareholder and sole officer, Mr. Petras.  While Mr. Petras tries to claim that Enagra's "presence"

17   in California is significant, quite simply that presence is no more and no less than Mr. Petras'

18   presence in any given location at any given time.

19         5.      Mr. Petras admitted that Enagra has no agent for service of process in this district.

20   Petras Dec. at ¶5, Ex. B.

21         6.      Enagra claims that it has an arm's-length business relationship with NBF.  In its

22   supporting memorandum, Enagra states that it "has bought fuel from NBF for resale."  Enagra

23   Memo of Law at 3:13.  This statement suggests that the transaction to which Enagra refers first

24   involved Enagra paying money to NBF for fuel, after which Enagra would receive money from a

25   third party for selling the fuel.  This is not what happened.

26

27                                                   - 2 -

28   DECLARATION OF ROBERT A. BLEICHER                                    Case No.  C 07-02582 CRB
     IN OPPOSITION TO ENAGRA, INC.'S MOTION
     FOR A PROMPT POST-ATTACHMENT HEARING

7.      Rather than the transaction occurring the way Enagra intimates it occurred, NBF chartered a vessel for the carriage of the fuel at issue to Europe.  According to the receiver of that fuel cargo, NBF transferred title of that fuel to Enagra during the vessel's voyage to the Netherlands.  The cargo receiver paid Enagra $3.2 million for the sale of that fuel oil on or about May 10th.  At no point during these actions did Enagra pay any money to NBF for the reported "sale" of that fuel cargo.  Indeed, only after RCL commenced its lawsuits against Enagra did Enagra render payment to NBF.

8.      Tellingly, the declaration of Michael Petras – Enagra's "sole officer and shareholder" – does not attach the sales agreement he claims Enagra entered into with NBF. Petras Dec. ¶2.  While promptly offering as exhibits the payments that were made by Enagra after the time when RCL named Enagra as an alter ego, and while mentioning "Enagra's agreement with NBF," Mr. Petras' declaration lacks a copy of the reported sales agreement by which Enagra was purported to pay NBF and which, presumably, provided that Enagra need not pay NBF until after it had already been named the title owner of several million dollars worth of fuel and that fuel had been sold to third parties in Europe. *Id.* at Ex. D.  It is one thing to retroactively make payments on a reported agreement that never existed; it is quite another to change the terms of a sales agreement or to create such an agreement from whole cloth.  Proof of payment has been shown, but the reported sales agreement has not.

9.      Although Enagra claims that it never has represented itself and NBF as one entity, the cargo manifest relating to the shipment of the fuel to the Netherlands show this to be incorrect.  Enagra Memo of Law at 8:7, Complaint ¶27, Ex. 5.  On the cargo manifest Enagra clearly listed its office address as the same address as NBF.  See also Complaint Ex. 6.

10.     I have not received notice that any assets have been attached as a result of service of the attachment order entered in this case.  Furthermore, when I asked opposing counsel if any assets had been attached, I was told only that Enagra's account had been "frozen."  Our office

- 3 -

DECLARATION OF ROBERT A. BLEICHER                              Case No.  C 07-02582 CRB
IN OPPOSITION TO ENAGRA, INC.'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

1   also contacted Citibank on Friday, June 1, 2007 to ask whether any Enagra assets had been

2   attached. As of the close of business on June 1, we had not received an answer from Citibank.

3       11.     Attached hereto as Exhibit A is the order denying NBF's motion to vacate RCL's

4   attachment, entered in the Central District of California in the case *Royal Caribbean Cruises Ltd.*

5   *v. National Biofuels, L.P.*, Case No. 07 CV07- 3144 AHM (SHx).

6       12.     Attached hereto as Exhibit B, is a copy of the check, dated 05/16/07, by which

7   Enagra paid NBF $2,870,698.

8       13.     As noted above, RCL obtained a Writ of Attachment against NBF in the Central

9   District of California, in the action entitled *Royal Caribbean Cruises Ltd. v. National Biofuels,*

10  *L.P.,* Case No. CV 07-3144-AHM (SHx). On May 23, 2007, NBF submitted the declaration of

11  Gerardo Manalac, Chief Executive Officer of National Biofuels, LLC, in support of its

12  unsuccessful motion to vacate RCL's Writ of Attachment in the Central District action. In

13  paragraph 4 of Mr. Manalac's Declaration, he stated that "NBF maintains offices and a place of

14  business at 228 Hamilton Avenue, Suite 325, Palo Alto, CA 94301."

15      14.     On Friday, May 25, 2007, at approximately 4:00 p.m., I visited the office building

16  located at 228 Hamilton Avenue, Palo Alto, CA. Attached as Exhibit C is a true and correct

17  copy of a photograph I took of the exterior of the office building located at 228 Hamilton

18  Avenue, Palo Alto, CA.

19      15.     Attached as Exhibit D is a true and correct copy of the photograph I took of the

20  sign on the exterior of 228 Hamilton Avenue, Palo Alto, CA, identifying the tenants of that

21  building: "Regus" and "General Atlantic." There is no other signage on the exterior of 228

22  Hamilton Avenue, Palo Alto, CA, indicating that NBF maintains an office in that building.

23      16.     Attached as Exhibits E, F, and G are true and correct copies of the photographs I

24  took of the tenant roster in the ground floor lobby of 228 Hamilton Avenue, Palo Alto, CA. NBF

25  is not listed as a tenant on this signage. Moreover, no tenant at 228 Hamilton Avenue, Palo Alto,

26  CA, is identified as maintaining an office in "Suite 325."

- 4 -

17.    I took the elevator to the third floor of 228 Hamilton Avenue, Palo Alto, CA. One exits the elevator into a waiting area of an entity called "Regus," a tenant which appears to occupy the entire space of the third floor. There is no readily apparent signage in the third floor waiting area of "Regus" that refers to NBF or otherwise identifies NBF as a tenant.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that I executed this declaration on June 4, 2007, in San Francisco, CA.

Robert A. Bleicher

# 4583478_v1

- 5 -

DECLARATION OF ROBERT A. BLEICHER
IN OPPOSITION TO ENAGRA, INC.'S MOTION
FOR A PROMPT POST-ATTACHMENT HEARING

Case No.  C 07-02582 CRB

# EXHIBIT A

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|---|---|---|---|
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

Proceedings:          IN CHAMBERS (No Proceedings Held)

ENTERED
CLERK, U.S. DISTRICT COURT

MAY 3 0 2007

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

## I.    INTRODUCTION

Plaintiff Royal Caribbean Cruises, Ltd. ("Plaintiff" or "RCL") and National Biofuels, L.P. ("Defendant") entered into a requirements contract in which Defendant agreed to sell Plaintiff biodiesel fuel according to Plaintiff's needs. On May 11, 2007, Plaintiff filed a Verified Complaint alleging that Defendant breached the contract by failing to provide fuel for delivery to one of Plaintiff's ships, as well as by not delivering additional fuel for which Plaintiff claims to have paid. On May 12, 2007, this Court issued an "Order Directing the Issuance of a Writ of Maritime Attachment and Garnishment," which Plaintiff used to attach Defendant's property that arrived at Westway Terminals in San Pedro, California.[1]

On May 22, 2007, the Court Granted Defendant's *ex parte* application for a post-attachment hearing, at which Plaintiff must show cause why the attachment should not be vacated. The Court conducted a hearing on May 24, 2007. In its papers and at the hearing, Defendant argued that the attachment should be vacated because (1) the Court lacks admiralty jurisdiction over the causes of action alleged in the Verified Complaint; and (2) Defendant is subject to suit in a convenient adjacent district. For the following reasons, both arguments fail. Therefore, the Court DENIES the *ex parte* application.

---

[1] Plaintiff obtained additional writs of attachment in New York and in the Northern District of California. (Declaration of Michael J. Frevola ("Frevola Decl.") ¶ 6; Declaration of Gerardo Manalac ("Manalac Decl."), Ex. 2, 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. CV 07-3144 AHM (SHx) | Date  May 25, 2007 |
| Title  ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | |

## II.    BACKGROUND DISCUSSION OF MARITIME ATTACHMENT

The facts in this section come verbatim from *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437-38 (2d Cir. 2006):

"[M]aritime attachment is a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47 (2d Cir.1996). In fact, "[t]he use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty . . . has prevailed during a period extending as far back as the authentic history of those tribunals can be traced." *Atkins v. The Disintegrating Co.*, 85 U.S. 272, 303 (1874). The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. U.S. Const. art. III, § 2. The power's historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950). . . .

Under the Rules Enabling Act, 28 U.S.C. § 2073, the Supreme Court in 1966 established the Supplemental Rules for Certain Admiralty and Maritime Claims, 383 U.S. 1071 (1966), a reformed and comprehensive codification of admiralty rules to govern the practice of the federal courts. Periodic amendments have followed.

Two of these Supplemental Rules are relevant to this case. First, Rule B governs the process by which a party may attach another party's assets. Rule B provides in relevant part:

If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property-up to the amount sued for-in the hands of garnishees named in the process. . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed.R.Civ.P. Supp. Rule B(1). To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. *Id.* If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|---|---|---|---|

| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. |

defendant's property located within the district. The order of attachment may be requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required. *Id.* Supp. Rules B(2), E(3).

Second, the defendant has an opportunity under Rule E(4)(f) to appear before the district court to contest the attachment once its property has been restrained. Rule E(4)(f) provides, in relevant part:

Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules....

*Id.* Supp. Rule E(4)(f).

The text of Rule E(4)(f) itself does not explain under what circumstances the district court should vacate the attachment. Without doubt the Rule E(4)(f) hearing provides defendants with an opportunity to argue that the requirements of Rule B were not in fact met- for example, that the defendant turned out to be "found within the district." *Id.* Supp. Rule B(1)(a).

## III.  ANALYSIS

### A.  Elements Plaintiff Must Establish

"Supplemental Rule E(4)(f) provides that any person claiming an interest in the attached property is 'entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.' *Id.* at E(4)(f). Therefore, the plaintiff has the burden to show that the attachment should not be vacated, and at the hearing the defendant can attack 'the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.' Fed.R.Civ.P. Supp. Rule E(f), Advisory Committee's Note." *Dolco Investments, Ltd. v. Moonriver Development, Ltd.*, 2007 WL 1237997, *3 (S.D.N.Y. 2007).

"Under *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434 (2d Cir. 2006), in a Rule E(4)(f) inquiry challenging a Rule B attachment, a plaintiff has the burden to show only that: (a) it has a *prima facie* admiralty claim; (b) the named defendants cannot be found within [the] district; (c) the attached defendant's property was within the district; and (d) that there is no statutory or maritime law bar to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|---|---|---|---|
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

attachment." *Id.*, citing *Aqua Stoli*, 460 F.3d at 445.

As to these four elements, which Plaintiff must prove, Defendant challenges only the first two. First, Defendant claims that the Court lacks admiralty jurisdiction over the causes of action alleged in the Verified Complaint. This argument is premised on Defendant's characterization of the parties' contract as executory. Second, Defendant argued in its "Amended Memorandum in Support of Application for a Prompt Post-Attachment Hearing" that it can be found within the Central District of California, although Defendant later appeared to abandon this argument.

1.    **Admiralty Jurisdiction**

Defendant cites to a long line of cases dealing with executory portions of requirement contracts. The first such case, *Steamship Overdale Co. v. Turner*, held that admiralty jurisdiction did not exist because the contract was still executory. 206 F. 339 (E.D. Pa. 1913). Similar to the contract between the parties here, *Steamship* involved the alleged breach of a contract to provide all the necessary coal required by the other party for its steamships. The court explained that admiralty jurisdiction did not exist because "[u]ntil the contract was executed, no particular vessel or no particular voyage was in contemplation of either of the parties. It had no reference to any particular maritime service or maritime transaction, nor to the navigation, business, or commerce of the sea. If coal had been supplied to the [steamship], the contract would apply as to the coal delivered to the navigation or commerce of the particular vessel, and admiralty would have jurisdiction. . . ." *Id.* at 341. This reasoning is referenced and followed in numerous cases cited by Defendant. *See, e.g.*, *Garcia v. Warner*, 9 F.Supp. 1010 (S.D.N.Y. 1934); *Jones v. Berwick Bay Oil Co.*, 697 F.Supp. 260 (E.D. La. 1988); *Dolco*, *supra*.

(a)    **The Status of the Law Regarding Executory Contracts**

Plaintiff contends that the principle that executory portions of contracts are not subject to admiralty jurisdiction is no longer sound. The Court disagrees. Plaintiff first relies on two inapplicable Supreme Court cases that do not mention or in any way address executory contracts. In *Norfolk Southern Railway Company v. Kirby*, contracts between the parties called for the shipment of goods from Australia to Alabama, including ground shipping from Georgia to Alabama. 543 U.S. 14, 18-19 (2004). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|---|---|---|---|
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

Court ruled that a railroad derailment during the ground shipping was subject to admiralty jurisdiction, because the contracts' "primary objective [was] to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States" and the "principle objective of [the] contract was maritime commerce." *Id.* at 24, 25. The relevant portion of the contract was not executory, and the Court did not even mention executory contracts.

In *Exxon Corporation v. Central Gulf Lines, Inc.*, the Court overruled *Minturn v. Maynard*, 58 U.S. 477 (1854) and held that there is no *per se* rule excluding agency contracts from admiralty. 500 U.S. 603, 604-05 (1991). As in *Norfolk Southern*, the relevant portion of the contract was not executory, and the Court did not mention executory contracts. In fact, the Court specifically emphasized that its ruling was "a narrow one" and it "remove[d] only the precedent of *Minturn* from the body of rules that have developed over what types of contracts are maritime." *Id.* at 612.

Plaintiff also cites to *Compania Argentina de Navegacion Dodero v. Atlas Maritime Corporation*, in which the court found admiralty jurisdiction did apply to a contract to repair a specific ship at a specific time. 144 F.Supp. 13, 14 (S.D.N.Y. 1956). The defendant in *Compania* argued that the contract was not subject to admiralty jurisdiction, because "the action is one alleging a breach of an executory contract, and . . . such actions are not within the admiralty jurisdiction of [the court]." *Id.* at 14. The court responded that "[i]f such was ever the law, it is certainly not the law since the decision of the United States Supreme Court in *Archawski v. Hanioti*, 1956, 350 U.S. 532." *Id. Compania's* reliance on *Archawski* was misguided, because *Archawski* did not concern or even mention an executory contract. *Compania* found that admiralty jurisdiction existed because the contract concerned a single delivery of products to a specified vessel. The court distinguished that situation from those in *Steamship and Garcia*, where there were "agreements to supply the owner of several steamships all the fuel required by the steamships for a period of time" and "no particular vessel and no particular voyage was in the contemplation of the parties." *Id.* at 14-15. In distinguishing *Steamship* and *Garcia*, *Compania* implicitly acknowledged the vitality of the principle set forth in those cases: that there is no admiralty jurisdiction over portions of a requirements contract that are not linked to a particular vessel and a particular voyage.

**(b)     The Cases Cited by Defendant Are Inapplicable Here**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|---|---|---|---|
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

Plaintiff then argues that even if the executory portion of a requirements contract is not subject to admiralty jurisdiction, this contract is not executory, and hence the *Steamship* and *Garcia* line of cases are inapplicable. This Court agrees. Black's Law Dictionary defines "executory contract" as: "A contract that remains wholly unperformed or for which there remains something still to be done on *both* sides. . . ." Bryan A. Garner (ed.), *Black's Law Dictionary* (8th ed. 2004) (emphasis added). Plaintiff argues that this contract is not executory with respect to the fuel for the cruise ship M/V INFINITY (the "Infinity"), because, Plaintiff alleges, it paid for this fuel on December 26, 2006, and the fuel "was slated for loading aboard [various] cruise ships [including] M/V INFINITY. . . ." (Verified Complaint ¶ 16). Thus, the substance of the Verified Complaint relates to the "necessities of a particular vessel for her own voyage," as required for admiralty jurisdiction in *Steamship*. *Steamship*, 206 F. at 340.

Plaintiff offers a series of e-mails that support its argument that the fuel it paid for in December was later tied to the Infinity. A February 27, 2007 e-mail from Paul Litvinov ("Litvinov"), the Commodity Manager of Plaintiff's Fuel Supply Chain, to Kevin Gorman, a representative of the Defendant, confirmed "the anticipated schedule and quantity requirements for . . . specific RCL vessels that would be taking on [Defendant's] fuel." (Declaration of Paul Litvinov ("Litvinov Decl."), ¶ 2, Ex. A). This schedule allocates the fuel to four specific ships, one of which is the Infinity (denoted as "IN"). (*Id.* at ¶ 3, Ex. A). In an April 22, 2007 e-mail from Litvinov to Gerardo Manalac ("Manalac"), the Chief Executive Officer of National Biofuels LLC,[2] Plaintiff requests a specific volume of fuel (1500 MT) for an April 22, 2007 delivery to the Infinity. This is the fuel that was not provided.

Defendant argues that it is "completely absurd" for Plaintiff to attempt to tie the December 26, 2006 payment mentioned in the Verified Complaint to specific vessels, because there is no reference to specific vessels in the documents transmitting funds or in the contract itself. (Manalac Reply Decl., Ex. 3-4; Verified Complaint ¶ 16). Manalac states that Defendant "does not know at the time of any given delivery whether [Plaintiff] actually loads delivered quantities upon any given vessel, or whether [Plaintiff] purchases it and re-sells it to any of a multitude of potential buyers. . . ." (*Id.*

---

[2] According to Manalac, National Biofuels LLC is the general partner for Defendant National Biofuels, L.P. (Declaration of Gerardo Manalac in Further Support of Application for an Order Vacating Attachment ("Manalac Reply Decl."), ¶ 2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No: | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|---|---|---|---|
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

at ¶ 8). As stated in the preceding paragraph, the two e-mails attached to the Litvinov Declaration sets forth the expected monthly fuel schedule *by ship* and these e-mails nominate precise amounts of fuel for delivery *by ship*.

Defendant further argued at the hearing that the contract was executory because Plaintiff failed to fulfill its requirements under the contract. As Defendant's counsel acknowledged at the hearing, the April 19, 2007 e-mail from Litvinov to Manalac *is* a nomination, as required of Plaintiff according to the contract. (Litvinov Decl., Ex. B). Defendant argued, however, that Plaintiff did not fulfill its additional requirement to specify a delivery vehicle.[3] This argument fails for two reasons. First, Defendant fails to establish where the contract states that Plaintiff is required to specify the delivery vehicle. Second, the e-mail from Litvinov does confirm that Jankovich, a barge company, would pick up the fuel. (Litvinov Decl., Ex. B). Defendant's counsel argued that the e-mail did not adequately specify the delivery vehicle, because it asked whether Jankovich could pick up the fuel, rather than stating that it would. That is not a fair construction. What Litvinov was asking was whether the specified fuel quantities would be available on the delivery dates. (*Id.*). He made it clear that if the fuel was available, it would be picked up by Jankovich. (*Id.*). Thus, Defendant's argument fails.

Accordingly, the Court finds that Plaintiff has made a *prima facie* showing that the payment it made *and completed* in December 2006 was for a supply of biodiesel fuel ultimately designated for a particular vessel (the Infinity). As a result, the line of cases cited by Defendant regarding executory contracts are distinguishable. Therefore, the Court finds that Plaintiff's claim is subject to admiralty jurisdiction.

## 2.    Defendant is Not Found Within the Central District of California

"The Admiralty Rules do not define the expression 'found within the district.' In the cases construing Rule 2, however, the requirement is said to present a two-pronged inquiry: first whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *State of Oregon State Highway Commission v. Tug Go Getter*, 398 F.2d 873, 874 (9th Cir. 1968)

---

[3] According to counsel for both parties, fuel deliveries cannot be made directly from the storage tanks at Westway Terminal to Plaintiff's ships. Instead, the fuel is loaded onto a barge, which transports the fuel from the storage tanks to the ships.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

(internal citations omitted).

In his declaration in support of Plaintiff's initial *ex parte* application for an order directing the issuance of a writ of attachment, Plaintiff's counsel Michael J. Frevola ("Frevola") researched the Defendant's presence in California. (Declaration of Michael J. Frevola, Esq. in Support of Plaintiffs' [sic] *Ex Parte* Application ¶ 7). He declared that he "conducted a search for [Defendant] on-line through the California Business Portal and searched the local telephone directories for any listings of the corporate Defendants. Defendant NBF has no listed business addresses in California, has no listed telephone address in California, and has no agent for service of process present in [the Central] District (although it does have such an agent in the Northern District of California)." *Id.*

In its May 22, 2007 "Amended Memorandum in Support of Application for a Prompt Post-Attachment Hearing," Defendant argues that it *is* subject to personal jurisdiction in the Central District of California. Defendant appears to have abandoned this argument, because it was not argued in either its May 23, 2007 "Memorandum in Support of Vacating Attachment" (hereinafter, "Reply") or at the hearing. Regardless of whether Defendant meant to abandon this argument, Defendant offers no evidence of the second required prong – that it can be found for service of process in the Central District of California. Therefore, the Court finds that, for the purposes of Supplemental Rule 2, Defendant is not "found" in the Central District of California.

### 3. Conclusion

Therefore, the Court finds that Plaintiff has met its burden to survive Defendant's challenge to its Rule B attachment.

### B. Elements That Defendant Must Establish to Have the Attachment Vacated

Although Plaintiff has satisfied its burden under the Supplemental Rules,

the Court may still vacate the attachment if Defendant establishes one of the equitable grounds for vacatur set forth in *Aqua Stoli*, 460 F.3d at 445. According to *Aqua Stoli*, "a district court may vacate the attachment if the defendant shows at the Rule E hearing that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date: | May 25, 2007 |
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

. . . the defendant is subject to suit in a convenient adjacent jurisdiction." *Id.*[4] Defendant argues that (1) it is subject to suit in the Northern District of California (the "Northern District") and (2) the Northern District is a convenient adjacent jurisdiction.

      1.    **Whether Defendant Is Subject to Suit in the Northern District of California**

As stated above, Defendant must prove first that it is subject to personal jurisdiction in the Northern District and second, that it can be found there for service of process. *See, State of Oregon State Highway Commission,* 398 F.2d at 874. Defendant does have an agent for service of process in the Northern District. As stated above, however, Frevola's search for Defendant's presence in California yielded no business address or telephone number. (Declaration of Michael J. Frevola, Esq. in Support of Plaintiffs' [sic] *Ex Parte* Application ¶ 7).

In its May 23, 2007 Reply, Defendant for the first time claims to have an office and place of business in the Northern District at 228 Hamilton Avenue, Suite 325, Palo Alto, California 94301. (Reply, 4:11; Manalac Reply Decl. ¶ 4). Defendant states that it has two full time employees working at this office and has had at least two such employees there since March 2006. (Reply, 4:11-13; Manalac Reply Decl. ¶ 4).

At the hearing, the Court expressed skepticism about the adequacy of Defendant's evidence establishing that it has an office in the Northern District.[5] The Court noted that

---

    [4] Defendant does not argue the two other bases for a district court to vacate the attachment that are set forth in *Aqua Stoli. Aqua Stoli,* 460 F.3d at 445.

    [5] Despite the claimed existence of this office, there is no California office address listed in the "Foreign Limited Partnership Application for Registration" that Defendant filed with the California Secretary of State on March 14, 2006. (Manalac Decl., Ex. 1). In an effort to corroborate the existence of the office, Defendant submits an April 17, 2007 invoice from a third-party supplier for office, furniture, and communications rent. (Manalac Reply Decl. ¶ 4, Ex. 1). Manalac claims this invoice demonstrates the Palo Alto office address and that the office is used for business purposes. (*Id.*). However, the invoice contains no office address whatsoever for Defendant, either in Palo Alto or its Houston headquarters. (*Id.* at Ex. 1). Instead, the space in the invoice that would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No: | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
| --- | --- | --- | --- |
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

Defendant's filings on May 21 and May 22 made no mention of this office or argument that Defendant is subject to personal jurisdiction in the Northern District.[6] Defendant's counsel explained that this omission was due to the rush to submit these filings, but Defendant had ample time since the writ was entered on May 12.

Defendant mentioned the alleged office for the first time in its Reply, and the only evidence supporting its existence is Manalac's sloppy reply declaration. In any event, the Court makes no conclusive finding on whether Defendant is subject to suit in the Northern District.

2.     **Whether the Northern District is a Convenient Adjacent Jurisdiction**

*Aqua Stoli* addresses the question of whether an adjacent jurisdiction is "convenient" as follows:

> The concept of "convenience," however, is a narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an in personam lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought. An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated. It is less clear to us that a district court could vacate an attachment on convenience grounds where the adjacent district is more remote and therefore less obviously "convenient" to the plaintiff.

*Aqua Stoli*, 460 F.3d at 444.

---

presumably list Defendant's address is conspicuously blank. (*Id.*). The only address actually listed on the invoice is that of the company that sent the invoice to Defendant. *Id.*

[6] These filings were the May 21, 2007 "Memorandum in Support of Application for a Prompt Post-Attachment Hearing" and the May 22, 2007 "Amended Memorandum in Support of Application for a Prompt Post-Attachment Hearing."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
|----------|----------------------|------|--------------|
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. | | |

It is noteworthy that the "paradigmatic example" of the Southern and Eastern Districts of New York are the only jurisdictions in which the parties or the Court have found an attachment that was vacated because Defendant was subject to suit in a convenient adjacent jurisdiction. *See, e.g., Royal Swan Navigation Co. Ltd. v. Global Container Lines Ltd.*, 868 F.Supp. 599 (S.D.N.Y. 1994) (court's approach later rejected in *Aqua Stoli*, 460 F.3d at 446). Defendant argues that the Central and Northern Districts of California are similarly "across the river" from each other. The federal courthouse in Foley Square is some two miles across the East River from the federal courthouse in Cadman Plaza. The closest federal courthouse in the Northern District, in San Jose, is over 300 miles from this Court. Defendant further argues that the Northern District is convenient because Plaintiff's counsel has an office in San Francisco. Defendant fails to present any cases, however, in which courts found it appropriate to consider the Plaintiff's (or Plaintiff's counsel's) contacts in the adjacent district. Thus, the Court finds that the Northern District is not a "convenient adjacent jurisdiction" for purposes of vacating the attachment.

### 3.    Conclusion

The Court finds that Defendant has not met its burden of proving that the attachment should be vacated because Defendant is subject to suit in a convenient adjacent jurisdiction. The court-made bases for vacating attachments set forth in *Aqua Stoli* are designed to avoid the inequity resulting when a plaintiff technically meets the requirements in the Supplemental Rules, but may be seeking the attachment in the forum district for an improper purpose. That is not the case here. In the most basic sense, this dispute arose because Plaintiff paid Defendant for fuel that Defendant never delivered. The Court finds that equity dictates maintaining the attachment to the benefit of the party that paid, rather than vacating the attachment to the benefit of the party that received payment but did not deliver.

//

//

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3144 AHM (SHx) | Date | May 25, 2007 |
| Title | ROYAL CARIBBEAN CRUISES LTD. v. NATIONAL BIOFUELS, L.P. |

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's *ex parte* application to vacate the attachment.[7]

THIS ORDER IS NOT INTENDED FOR PUBLICATION.

Initials of Preparer

---

[7] Dkt. No. 15.

**EXHIBIT** B

## OFFICIAL CHECK

**citibank**
Citibank, N.A.

924056352

**SERVICE INSTRUCTIONS**
PLEASE CONSULT A CITIBANK ASSOCIATE OR YOUR CLIENT MANUAL FOR A
DESCRIPTION OF THE BANK'S POLICY CONCERNING PLACING A STOP PAYMENT
REQUEST ON THIS INSTRUMENT AND THE FEE ASSOCIATED WITH THAT REQUEST.

16-2958
1220

FOR YOUR PROTECTION SAVE THIS COPY

REMITTER COPY

## NON NEGOTIABLE

Issued by Integrated Payment Systems Inc., Englewood, Colorado
To Citibank, N.A., Los Angeles, CA

<u>TERMS</u>
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION. TO REPORT A LOSS OR FOR ANY OTHER INFORMATION
ABOUT THE INSTRUMENT, CONTACT THE INSTITUTION FROM WHICH YOU RECEIVED THE INSTRUMENT.